

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-12-2001

# Chmakov v. Blackman

Precedential or Non-Precedential:

Docket 00-2235

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Chmakov v. Blackman" (2001). *2001 Decisions.* Paper 208.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/208

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 11, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2235

ALEKSANDR CHMAKOV; NADEJDA CHMAKOVA;
DENIS CHMAKOV,
        Appellants

v.

J. SCOTT BLACKMAN, AS DISTRICT DIRECTOR OF THE
IMMIGRATION AND NATURALIZATION SERVICE

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 00-cv-02128
District Judge: The Honorable Ronald L. Buckwalter

Argued: July 27, 2001

Before: ROTH, BARRY, and FUENTES, Circuit Judges

(Filed: September 11, 2001)

        Tatiana S. Aristova, Esq. (Argued)
        John J. Gallagher, Esq.
        Law Offices of John J. Gallagher
        1760 Market Street, Suite 1100
        Philadelphia, PA 19103

         Attorneys for Appellants

        Stephen J. Britt, Esq. (Argued)
        Assistant U.S. Attorney
        Office of the United States Attorney
        615 Chestnut Street
        Philadelphia, PA 19106
          AND

        Thankful T. Vanderstar, Esq.
        Terri J. Scadron, Esq.
        Office of Immigration Litigation
        Civil Division, Department of Justice
        P.O. Box 878
        Ben Franklin Station
        Washington, D.C. 20044

         Attorneys for Appellee

OPINION OF THE COURT

BARRY, Circuit Judge:

In this appeal, we are called upon to answer a single legal question: did the District Court have jurisdiction to entertain a habeas corpus petition alleging a Fifth Amendment due process violation filed by aliens subject to a final order of removal for reasons other than a conviction for a deportable crime?[1] Because the Supreme Court has concluded that Congress has not explicitly stated its intention to strip the federal courts of their habeas jurisdiction over petitions filed by aliens, whether those aliens be criminal or non-criminal aliens, we answer that question in the affirmative. Accordingly, we will reverse.

I.

The appellants are husband and wife, Aleksandr Chmakov and Nadejda Chmakova, and their son, Denis (collectively, the Chmakovs). The Chmakovs are Russian,

_____

1. We will refer to such aliens as "non-criminal aliens." Our intention in so doing is merely to distinguish them from aliens who are being deported because they have been convicted of certain criminal offenses.

but are citizens of Uzbekistan, which they describe as a "Middle Asian republic." They entered the United States on October 3, 1994 as non-immigrant tourists. In May of 1998, the Immigration and Naturalization Service (INS) commenced removal proceedings against them pursuant to 8 U.S.C. S 1229. The Chmakovs promptly filed for political asylum pursuant to 8 U.S.C. S 1158. After a hearing, an Immigration Judge (IJ) denied their application. The Chmakovs filed a notice of appeal with the Board of Immigration Appeals (BIA). Unfortunately, their then-attorney failed to file a timely brief and the BIA denied counsel's motion to file a late brief. On January 14, 2000, the BIA dismissed the appeal. The Chmakovs, still represented by the same attorney, failed to file an appeal with this Court.[2]

When it dismissed the Chmakovs' appeal, the BIA remanded the case to the IJ because he had failed to set a voluntary departure bond pursuant to 8 U.S.C. S 1229c(b)(3). The IJ reopened the case on February 24, 2000, set the voluntary departure bond, and ordered voluntary departure by April 24, 2000. Again, no appeal was filed from this order.

It was apparently not until the February 24 hearing on setting the voluntary departure bond that the Chmakovs realized that their attorney had not adequately prosecuted their claim for asylum. The Chmakovs then retained their present counsel, and counsel took several steps on their behalf. On or about March 28, 2000, a motion for reopening and reconsideration was filed with the BIA, alleging, as relevant here, the ineffective assistance of predecessor counsel with regard to the BIA's decision of January 14, 2000 dismissing the asylum claim. The BIA denied this motion on February 12, 2001 because one of the criteria set forth in Matter of Lozada, 19 I.&N. Dec. 637

_____

2. The Chmakovs claim that the IJ made numerous errors in denying their application but because they were ineffectively represented before the BIA, those errors were never sufficiently addressed, much less rectified. The issue before us is solely the issue of jurisdiction and not the merits of the ineffective assistance claim. We note, however, that the District Court, with reason, stated that it would have been persuaded to grant relief but for its belief that it lacked jurisdiction to do so.

3

(BIA 1988), for establishing ineffective assistance claims was not evident in the record, i.e. whether a complaint was filed with the appropriate disciplinary authorities and if not, why not.3 On August 22, 2000, an appeal was filed with this Court seeking review of the January 14, 2000 dismissal. We dismissed that appeal as untimely.

Most relevant to this appeal, on April 24, 2000, the Chmakovs filed a petition for a writ of habeas corpus in the District Court. The petition alleged that the Chmakovs' Fifth Amendment right to due process had been violated because they received ineffective assistance of counsel before the BIA. The INS successfully moved to dismiss the petition for lack of subject matter jurisdiction, and a timely notice of appeal was filed. This is the appeal we now consider.4 The District Court had jurisdiction to determine its jurisdiction and we have jurisdiction under 28 U.S.C. S 1291.

II.

The INS argues that the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009-546, stripped the District Court of jurisdiction to entertain the Chmakovs' habeas petition. Both the Supreme Court and

_____

3. The Chmakovs filed an appeal of the denial of reopening and reconsideration with this Court. That appeal, No. 01-1574, is still pending. We note in passing that in our recent decision in Lu v. Reno, No. 00-3393, 2001 WL 829950 (3d Cir. July 24, 2001), we considered, for the first time, the Lozada three-prong test and found it to be a reasonable exercise of the Board's discretion. We recognized, however, the "inherent dangers . . . in applying a strict, formulaic interpretation of Lozada." Lu, 2001 WL 829950 *28.

4. Deportation has been stayed since April 28, 2000, by order first of the District Court and then of this Court. Somewhat surprisingly, given the stay, and for reasons we are unable to discern, on December 24, 2000, the INS took the Chmakovs into custody. On July 30, 2001, we ordered the INS to show cause why the Chmakovs, who by then had been in custody more than seven months, should not be released on their own recognizance pending the outcome of this appeal. The Chmakovs were released on August 8, 2001.

4

this Court have determined that notwithstanding the provisions of AEDPA or IIRIRA, district courts retain jurisdiction to hear habeas petitions filed by aliens subject to deportation for having committed certain criminal offenses. Zadvydas v. Davis, 121 S.Ct. 2491, 2497 (2001); INS v. St. Cyr, 121 S.Ct. 2271, 2287 (2001); Liang v. INS, 206 F.3d 308, 317 (3d Cir. 2000), cert. denied , 121 S.Ct. 2590 (2001); Sandoval v. Reno, 166 F.3d 225, 231 (3d Cir. 1999). The INS asserts that the rule of these cases is only applicable where the alien had no other avenue to seek review of the removal order. Unlike the aliens in Zadvydas, St. Cyr, Liang, and Sandoval, the Chmakovs had the right to seek direct review in this Court of the removal order and the denial of their asylum claim. On that basis, the INS contends that the Chmakovs should not also be given an opportunity to seek review of their claim by means of a habeas petition.

There is no dispute that prior to AEDPA and IIRIRA, district courts had jurisdiction to hear habeas petitions challenging deportation orders. That jurisdiction was squarely based on the general habeas corpus statute, 28 U.S.C. S 2241. Prior to 1996, an alien challenging a deportation order on the basis of an alleged due process violation would unequivocally have had the right to seek habeas relief in district court. Following St. Cyr, it is incontrovertible that aliens being deported on the basis of certain criminal convictions would still have that right. We see no reason to conclude that non-criminal aliens should be treated differently.

The Supreme Court has made it quite clear that there are two rationales in support of the conclusion that habeas is preserved for aliens subject to a final order of deportation. The first is "the strong presumption in favor of judicial review of administrative action . . ." St. Cyr, 121 S.Ct. at 2278. The second is "the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." Id. Thus, before we could find that the District Court lacked jurisdiction to entertain the Chmakovs' habeas petition, we would have to be satisfied both that there was another avenue for review of the BIA's decision and that Congress had clearly stated its intention to strip district courts of power to hear petitions such as this.

5

The first rationale is admittedly not at issue here because it is acknowledged by all parties that the Chmakovs had the right to seek review in this Court of the BIA's decision to dismiss their claim for asylum and order them deported. Similarly, judicial review of the BIA's denial of the Chmakovs' motion for reopening and reconsideration, clothed as it was in ineffective assistance garb, appears to be available and, indeed, an appeal is pending in this Court. Congress, of course, has the power to preclude non-criminal aliens from filing habeas petitions where those aliens have available to them another avenue of review. See Liang, 206 F.3d at 321 ("Congress may divest the district courts of habeas jurisdiction without violating the Suspension Clause so long as it substitutes `a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention' ") (quoting Swain v. Pressley, 430 U.S. 372, 381 (1977)).

While there is no Suspension Clause problem, however, the second rationale for finding the continuing existence of habeas jurisdiction must still be satisfied. The inquiry thus becomes whether Congress explicitly stated its intention to remove such jurisdiction? The answer, of course, is no. It is by now axiomatic that "[i]mplications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal." St. Cyr, 121 S.Ct. at 2278-79. See also Liang , 206 F.3d at 318 ("We unquestionably . . . requir[e] an explicit reference to habeas jurisdiction or its statutory provision in order to find an express congressional intent to repeal"); Sandoval, 166 F.3d at 232 ("only a plain statement of congressional intent to remove a particular statutory grant of jurisdiction will suffice"). In St. Cyr, Liang, and Sandoval, the Supreme Court and this Court carefully examined all of the relevant provisions of AEDPA and IIRIRA, and we will not again do so here. Suffice it to say, it is now beyond dispute that Congress did not explicitly state its intention to repeal the district courts' 28 U.S.C. S 2241 jurisdiction over habeas petitions filed by aliens subject to a final order of removal. St. Cyr, 121 S.Ct. at 2287 ("we conclude that habeas jurisdiction under S 2241 was not repealed by AEDPA and IIRIRA"); Liang, 206 F.3d at 317 (reviewing the provisions of

AEDPA and IIRIRA and holding that "[n]one expressly revoked habeas jurisdiction"); Sandoval, 166 F.3d at 238 ("neither AEDPA nor IIRIRA contains a clear statement that Congress sought to eliminate habeas jurisdiction under 28 U.S.C. S 2241").

In asking us to find that in the non-criminal alien setting Congress has stripped the district courts of jurisdiction over habeas petitions, the INS makes two points, both of which we reject. The first is that an explicit statement of intent to repeal habeas jurisdiction should only be required where such a repeal might cause a violation of the Suspension Clause. But this proposition has not been accepted by either the Supreme Court or this Court. Rather, as the St. Cyr Court put it most recently, if Congress wishes to repeal habeas jurisdiction, it must satisfy two separate and independent requirements. First, that repeal must not violate the Suspension Clause. Second, that repeal must be made in clear and unambiguous language. There is simply no reason to conclude that the absence of one factor would negate the necessity for the other.

The INS argues, second, that although the relevant provisions of AEDPA and IIRIRA do not evince a congressional intent to repeal habeas jurisdiction for criminal deportees, they do evince such an intent for non-criminal aliens. That argument borders on the nonsensical. The Supreme Court has held that those provisions have a particular meaning, and that meaning does not indicate a congressional intent to repeal habeas jurisdiction. It simply cannot be that the meaning will change depending on the background or pedigree of the petitioner. Were we to so hold, we would render the meaning of any statute as changeable as the currents of the sea, and potentially as cruel and capricious. We, therefore, conclude that Congress has preserved the right to habeas review for both criminal and non-criminal aliens.

The District Court believed, however, that it lacked jurisdiction for two reasons. First, the Court stated that because the Chmakovs were non-criminal aliens, they could (or could have) filed a petition for review in this Court. But, as we have discussed, the fact that there is no

7

Suspension Clause problem does not end the inquiry. Second, the Court stated that the relief the Chmakovs were seeking "arises from" the Attorney General's proposed action to execute a removal order and, thus, was barred by 8 U.S.C. S 1252(g). Habeas aside, if, indeed, the Chmakovs were seeking judicial review of the Attorney General's discretionary decision to execute a removal order, that review would clearly have been precluded by S 1252(g), which provides that

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

This provision limits the power of federal courts to review the discretionary decisions of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders. Reno v. American-Arab Anti-Discrimination Committee, 119 S.Ct. 936, 943 (1999).

But the Chmakovs are not seeking review of any discretionary decision made by the Attorney General. Rather, in the face of counsel's alleged ineffectiveness in representing them, they are challenging the legality of the BIA's decision dismissing their claim for asylum and entering a removal order against them. See Mustata v. U.S. Dept. of Justice, 179 F.3d 1017, 1022 (6th Cir. 1999) ("[w]e hold that the Mustatas' habeas petition does not fall within any of the three Attorney General decisions or actions covered by S 1252(g). In essence, the Mustatas' petition makes a claim that their counsel's ineffective performance at their hearing resulted in a deportation order entered against them without due process").

The INS asks that we follow the First Circuit's pre-St. Cyr decision in Foroglou v. Reno, 241 F.3d 111 (1st Cir. 2001), in which the dismissal of a non-criminal alien's habeas petition on jurisdictional grounds was affirmed. Even if we believed that the Supreme Court's decision in St. Cyr left us any choice in the matter, and we do not, we are not

8

convinced that Foroglou would support a dismissal on jurisdictional grounds here. The Foroglou Court specifically dealt with the alien's various challenges to the legality of his deportation, finding them to be either without merit or unpreserved. Once it held that the order of deportation was legal, the Court determined that the habeas petition could only be viewed as an attempt to seek judicial review of the Attorney General's decision to execute that order in violation of 8 U.S.C. S 1252(g). As discussed above, this is not what the Chmakovs are challenging.

Moreover, and importantly, the Foroglou Court also stated that "habeas might be available under restrictive conditions if a due process violation frustrated a deportee's right of direct appeal." Id. at 113 (citing Hernandez v. Reno, 238 F.3d 50, 54 (1st Cir. 2001)). That is precisely the claim that confronts us here. The Chmakovs contend that there was a denial of due process because predecessor counsel did not file a brief with the BIA and did not file an appeal with this Court, thus rendering the proceedings so fundamentally unfair that they were prevented from reasonably presenting their case. See Lozada v. INS, 857 F.2d 10, 13-14 (1st Cir. 1988). It will be for the District Court to determine whether they are right, or whether they are wrong.

III.

The Chmakovs sought habeas relief in the District Court because, they alleged, the immigration proceedings against them were so tainted by the ineffective if not wholly inadequate performance of their counsel as to violate their Fifth Amendment right to due process. Because Congress did not explicitly state its intention to preclude habeas review, the District Court wrongly determined that it lacked jurisdiction. We will reverse that determination and remand the case to the District Court for consideration of the Chmakovs' constitutional claim.

ROTH, Circuit Judge, dissenting:

I cannot agree with the majority that the Supreme
Court's decision in St. Cyr or, indeed, that the United
States Constitution compels the District Court to entertain
the Chmakovs' habeas corpus petition, given that the legal
questions raised by the denial of the Chmakovs' petition for
asylum could have been answered in the course of a direct
appeal.1 The failure on the part of the Chmakovs to seek
judicial review, whatever the cause, be it ineffective counsel
or another reason, is not comparable to the nonexistence of
an avenue to seek review. Therefore, I respectfully dissent.

The majority correctly points out that the Supreme Court
cited two principal considerations underlying its decision to
preserve the writ of habeas for the petitioner in St. Cyr: (i)
"the strong presumption in favor of judicial review of
administrative action" and (ii) "the longstanding rule
requiring a clear statement of congressional intent to repeal
habeas jurisdiction." St. Cyr, 121 S.Ct. at 2278. The former
requirement amounts to an admonition not to violate the
Suspension Clause; Congress can, of course, divest the
district courts of habeas jurisdiction without violating the
Suspension Clause so long as it provides petitioners with
another avenue of review (" `a collateral remedy which is
neither inadequate nor ineffective to test the legality of a
person's detention,' " Liang, 206 F.3d at 321 (quoting Swain
v. Pressley, 430 U.S. 372, 381 (1977)). However, my reading
of St. Cyr leads me to conclude that the former requirement
-- the presumption in favor of judicial review-- far
outstrips the latter in importance. Consequently, I conclude
that the majority relies too heavily on the clear statement
requirement and that it errs in treating that requirement as
an independent factor on an equal footing with the
existence of an avenue to seek judicial review.

The language of St. Cyr repeatedly suggests, in keeping
with the Suspension Clause, that where the petitioner has
available to him an alternate avenue of review, the writ of
habeas corpus simply need not be available. In its

---

1. Whether the Chmakov's pending appeal of the denial of asylum can
afford them relief or whether that appeal is a timely one, are issues that
are not before us.

discussion of the Suspension Clause, the St. Cyr Court articulated the touchstone of that Constitutional provision: "Because of that Clause, some `judicial intervention in deportation cases' is unquestionably `required by the Constitution.' " St. Cyr, 121 S.Ct. at 2279 (quoting Heikkila v. Barber, 345 U.S. 229, 235, 73 S.Ct. 603 (1953)). The Court stressed the importance of the availability of alternative methods of review later in its discussion of the Suspension Clause, presenting that factor as the sine qua non of its analysis: "a serious Suspension Clause issue would be presented if we were to accept the INS's submission that the 1996 statutes have withdrawn that power from federal judges and provided no adequate substitute for its exercise." St. Cyr, 121 S.Ct. at 2282 (citing Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv.L.Rev. 1362, 1395–1397 (1953)).

Later in the opinion, the St. Cyr Court again characterized the availability of an alternative judicial forum as the principal, if not single, factor in its decision: "If it were clear that the question of law could be answered in another judicial forum, it might be permissible to accept the INS' reading of S 1252." St Cyr, 121 S.Ct. at 2287. The Court then cited that factor, "coupled with" the lack of a clear Congressional statement stripping the courts of jurisdiction, in declining to rule that habeas jurisdiction had been repealed. Id. Consequently, it seems that the clear statement requirement is a consideration at most secondary to the forum availability requirement.

Quite apart from its justification in the language of the St. Cyr decision, this interpretation is firmly rooted in logic. Whereas the alternative forum rule is based upon the Suspension Clause and is therefore of constitutional magnitude, the clear statement requirement is simply an expression of two familiar canons of construction and is therefore of lesser import. As the St. Cyr Court said of the clear statement rule,

> First, . . . when a particular interpretation of a statute invokes the outer limits of Congress' power, we expect a clear indication that Congress intended that result. See Edward J. DeBartolo Corp. v. Florida Gulf Coast

11

Building & Constr. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1932, 99 L.Ed.2d 645 (1988). Second, if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is "fairly possible," see Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932), we are obligated to construe the statute to avoid such problems. See Ashwander v. TVA, 297 U.S. 288, 341, 345–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909).

St. Cyr, 121 S.Ct. 2279 (emendation added).

These observations, together with the passages of the St. Cyr opinion cited supra, suggest that the "fact that there is no Suspension Clause problem" does in fact "end the inquiry." Majority Opinion at 7–8. Thus, contrary to the majority's view, the principal argument offered by the INS in this case -- that an explicit statement of intent to repeal habeas jurisdiction should only be required where the repeal might lead to a violation of the Suspension Clause -- is consonant with the Supreme Court's decision in St. Cyr.

For the foregoing reasons, I would affirm the decision of the District Court finding that it lacked jurisdiction to grant the Chmakovs habeas relief.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

12