**Esther Benyah PICKETT, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 3:02CV622(JBA).**

United States District Court, D. Connecticut.

June 19, 2002.

Esther Benyah Pickett, Niantic, CT, Pro se.

US Court of Appeals, Office of the Clerk, New York City, Notice Only.

Deborah R. Douglas, U.S. Attorney's Office, New Haven, CT, for Defendant.

### Ruling on Petition for Writ of Habeas Corpus [Doc. # 2]

ARTERTON, District Judge.

Petitioner Esther Pickett seeks a writ of habeas corpus under 28 U.S.C. § 2241,

requesting relief from a final order of deportation. For the reasons set out below, Pickett's petition is DISMISSED for lack of subject matter jurisdiction.

## I. Factual and Procedural Background

Pickett, a native and citizen of Liberia, pled guilty on December 6, 1999 to a charge of Conspiracy to Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 846 & 841(a)(1), and was sentenced to two years imprisonment and two years supervised release on March 16, 2000. *See* Judgment in a Criminal Case, *United States v. Pickett*, No. 99–261(2)(DSD) (D.Minn. March 16, 2000) (Ex. B to Govt's Response). On January 30, 2001, the Immigration and Naturalization Service ("INS") instituted removal proceedings against Pickett, *see* Notice to Appear, *In the Matter of Pickett*, No. A29 810 457 (Jan. 30, 2001) (Ex. A to Govt's Response), and a hearing before an Immigration Judge ("IJ") was held, at which Pickett was represented by counsel.

At the hearing, Pickett requested asylum, withholding of removal, and relief under the Convention Against Torture ("Torture Convention").[1] Transcript of Removal Hearing (Ex. D to Govt's Response) ("Tr.") 6. Due to her conviction, however, her attorney conceded that asylum was not a possibility. Tr. 36. Pickett testified that she was born in Firestone, Liberia, and first entered the United States in 1979. Tr. 41. She last entered the United States in 1992, and since that time, she has not departed. *Id.* Pickett described the civil war in Liberia, and explained the President Doe had been killed by Charles Taylor, the current pres-

ident. Tr. 43. She explained that the civil war is still in progress. Tr. 43–44.

Pickett testified that in the 1970s she married a man, Nathaniel Jeffries, who was instead supposed to marry President Doe's niece with whom he (Jeffries) has a child. Tr. 45. As a result of Jeffries choosing her over Doe's niece, Pickett claims that Doe rebels killed her brother and burned their house down. Tr. 46. She testified that because of her marriage to Jeffries, the Doe rebels burned down her entire village. Tr. 52. Additionally, Pickett testified that she and Doe's niece fought. Tr. 49.

Pickett testified further about the current situation in Liberia, which includes infighting among ethnic groups, rape, unequal treatment of women, and female circumcision. Tr. 65–67. She also described being forcibly subjected to female circumcision when she was younger than age ten. Tr. 70. Pickett described being a victim of domestic violence at the hands of her husband, whom she divorced in 1995, and who is now incarcerated in the United States. Tr. 72–73. Finally, Pickett testified that Hairston Kayi, the father of her twenty-four year old son and a member of the Taylor administration, might attack her because after her son was born, she left Kayi and returned to Jeffries. Tr. 78.

During cross examination and the examination by the IJ, Pickett admitted that since 1980, she had visited the United States perhaps twenty times or more, and always returned to Liberia. Tr. 98–101. She also visited Sierra Leone, Ghana and the Ivory Coast. *Id.* She admitted that she has never been detained, arrested, in-

---

1. Convention against torture and other cruel, inhuman or degrading treatment or punishment, 23 I.L.M. 1027 (1984), as modified 24 I.L.M. 535 (1985); adopted by the U.N. General Assembly Dec. 10, 1984, entered into force June 26, 1987, ratified by United States Oct. 21, 1994, 34 I.L.M. 590, 591 (1995), and entered into force for the U.S. Nov. 20, 1994. Article 3 of the Convention provides: "No State Party shall ... extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."

terrogated or imprisoned in Liberia, and that Jeffries is currently in the United States serving a five year prison term. Tr. 102. The IJ noted, and Pickett agreed, that although Pickett married Jeffries in 1972, President Doe was not in power until 1980. Tr. 107. Additionally, Doe was killed in 1990, and Charles Taylor then assumed power. Tr. 110.

On September 5, 2001, the IJ issued a final order of removal. Ex. M to Govt's Reply ("IJ Decision"). The IJ concluded that Pickett was subject to removal both based on a crime relating to a controlled substance and an aggravated felony based on a conviction for illicit trafficking in a controlled substance. *Id.* at 1–2. The IJ rejected Pickett's claim for withholding of removal under INA § 241(b)(3)(A) and for withholding of removal under the Torture Convention. As to Pickett's INA § 241(b)(3)(A) claim for withholding, the IJ concluded that her drug offense was a "particularly serious crime," *see* INA § 241(b)(3)(B)(ii); IJ Decision at 10, and in the alternative that she failed to establish that she would be singled out for persecution on any of the five enumerated grounds in the statute, *id.* at 12. The IJ noted the seriousness of a heroin trafficking operation, *id.* at 9, and even though Pickett was given a sentence reduction for being a minor participant, *id.* at 10, the IJ disbelieved Pickett's assertion that her participation in the heroin smuggling was a one-time occurrence, *id.* As to the IJ's alternative finding that Pickett had not shown she would be singled out for persecution on an INA § 241(b)(1) enumerated ground (race, religion, nationality, membership in a particular social group, or political opinion), the IJ followed the procedure set out in 8 C.F.R. § 208.16(b): first, the IJ concluded that there was insufficient evidence of past persecution, IJ Decision at 10–11, and then concluded that Pickett had failed to meet her burden of proving future persecution, *id.* at 12. The IJ noted that

while there is evidence of significant violence in Liberia, including rape and other violence against women, "the evidence does not ... establish that all Liberian women have a well-founded fear of persecution or even a clear probability of persecution solely because of their gender." *Id.* at 13 (*citing Safaie v. INS,* 25 F.3d 636, 640 (8th Cir.1994)).

Finally, with respect to Pickett's claim for withholding under the Torture Convention, the IJ found that Pickett failed to establish that she would be singled out by the government of Liberia for torture. Tr. 14–15. The IJ noted that to qualify as "torture" under the Torture Convention, the activities "must be at the hands of individuals working on behalf of the government and that the respondent would [have to] be in the custody or control of government actors." Tr. 14; *see generally* 8 C.F.R. § 208.18(a).

Pickett, still represented by counsel, appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA, with one member dissenting, affirmed the decision of the IJ and concluded that Pickett was ineligible for withholding of removal under § 241(b)(3)(A) or the Torture Convention. *See* Ex. N to Govt's Response. In a per curiam opinion, the panel concluded that the IJ "considered all relevant factors in reaching his conclusion and we agree with that conclusion." *Id.* at 1 (*citing Matter of LS,* Interim Decision 3386 (BIA 1999)). As to the IJ's conclusion that Pickett's heroin conviction was a particularly serious crime, the BIA noted that "the quantity of heroin involved in the trafficking scheme was substantial, as was the 2–year prison sentence respondent received for her role in the criminal enterprise." *Id.* The BIA agreed, as well, with the IJ's alternative holding that Pickett did not establish an adequate objective basis for her claimed fear of persecution in Libya. *Id.* at 1–2. Finally, as to Pickett's

Torture Convention claim, the BIA found that Pickett's evidence "is insufficient to support an affirmative finding that she will likely be subject to government sponsored or sanctioned torture upon her return to Libya." *Id.* at 2.[2]

■ The BIA's decision affirming the IJ's final order of removal was rendered on March 5, 2002. Pickett was precluded from petitioning the U.S. Court of Appeals for the Second Circuit for review under 8 U.S.C. §§ 1252(a)(1) & (b)(2) of INS's decision by virtue of her heroin conviction. 8 U.S.C. § 1252(a)(2)(C); *Calcano–Martinez v. INS*, 533 U.S. 348, 351–352, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001). Less than thirty days after the BIA's decision,[3] Pickett, proceeding *pro se*, filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241. In her petition, she states that her children are United States citizens and would suffer irreparable harm should she be returned to Liberia, and that she fears for her safety if she is returned, as Liberia is in a state of civil strife.

Pickett seeks relief under INA § 241(b)(3)(A) and the Torture Convention.[4] While the "Introduction" section of Pickett's petition states that she "brings this action of a writ of habeas corpus based upon a challenge to the constitutionality of an Immigration and Naturalization Act provision which extends potential asylum relief to certain illegal aliens whose country is in civil strife," she gives no precision as to what makes it unconstitutional and instead asserts her eligibility for relief under both the INA and the Torture Convention. Pickett also specifies that "[d]etention of individuals is an extraordinary power that should only be used in extraordinary circumstances" and that "the mandatory detention of immigrants who pose no threat to society is anathema to the protections of the constitution's due process clause." However, Pickett seeks withholding of removal under the INA § 241(b)(3)(A) and/or the Torture Convention, *see supra* note 3, not release from detention.[5]

**2.** The dissenting panel member disagreed that Pickett's drug conviction was "particularly serious," reasoning that the record did not support the IJ's view that the heroin conviction may not have been Pickett's first offense. *Id.* at 3–4. The dissent "would evaluate [Pickett's] claim under the standard for withholding, find that she met her burden and grant withholding," *id.* at 4. The dissent does not address why Pickett would nonetheless meet the requirements of INA § 241(b)(3)(A), despite the majority's affirmance of the IJ's alternative holding that Pickett had failed to prove eligibility for withholding under INA § 241(b)(3)(A).

**3.** The BIA's decision was issued on March 5, 2002, and Pickett's petition is postmarked April 3, 2002. As Pickett is in custody, any papers she submits are deemed filed as of the date she presents them to prison officials for mailing. *See Dory v. Ryan*, 999 F.2d 679, 681–682 (2d Cir.1993).

**4.** "Wherefore, petitioner respectfully prays this Court to: (a) Assume jurisdiction over

this matter[; and] (b) Grant her asylum under section 241(b)(3)(A) of the Act, 8 U.S.C. § 1231(b)(3)(A) and relief under the Convention that is country is currently in civil strife." While Pickett refers to "asylum" under INA § 241(b)(3)(A), that section grants only withholding of removal. Further, while Pickett uses only the word "Convention" (as opposed to "Convention Against Torture"), her claim is construed as meaning the Convention Against Torture, since that is the only convention that was at issue in the administrative process.

**5.** Any challenge to the length of detention would be without merit, as the BIA's decision was issued March 5, 2002 and Pickett is scheduled to be removed June 29, 2002. Under *Zadvydas v. Davis*, 533 U.S. 678, 701, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), there is a presumptively reasonable six month period for the detention pending deportation of criminal aliens. This six month period began to run on March 5, 2002, when the issuance of the BIA's decision made the IJ's final order of deportation administratively final. *See* 8

In response to Pickett's § 2241 petition, the Government argues that because the Torture Convention was declared by the Senate to be a non-self-executing treaty and because of language in the implementing laws and regulations that the Government reads as precluding judicial review, the Court lacks subject matter jurisdiction to consider Pickett's Torture Convention claim. While preserving its jurisdictional argument, the Government also argues in the alternative that the record supports the BIA's and IJ's conclusion that Pickett is ineligible for withholding of removal.

## II. Analysis

Although Pickett's heroin conviction precludes a petition for direct review of the final order of removal to the Second Circuit, 8 U.S.C. § 1252(a)(2)(C); *Calcano–Martinez v. INS*, 533 U.S. 348, 351–352, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001), this Court retains jurisdiction under 28 U.S.C. § 2241 to hear some challenges to final orders of deportation. *INS v. St. Cyr*, 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). While "[t]he precise scope of such jurisdiction remains unclear[,]" *Sol v. INS*, 274 F.3d 648, 651 (2d Cir.2001), the Second Circuit has held that "federal courts retain jurisdiction to review 'purely legal statutory and constitutional claims,' " *id.* (*quoting Calcano–Martinez v. INS*, 232 F.3d 328, 342 (2d Cir.2000), *aff'd*, 533 U.S. 348, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001) and *citing Henderson v. INS*, 157 F.3d 106, 122 (2d Cir.1998)).

Pickett's petition seeks review of the IJ's and BIA's decision that she does not qualify for relief from deportation: she asks the court to "[g]rant her [withholding] under [§ ] 241(b)(3)(A) [and] relief under the Convention [Against Torture]." While, as noted above, Pickett employs the word "constitutionality," she makes no further mention of a constitutional challenge and later asks for relief under these two sources of legal authority. Thus, the Court must determine the scope of its subject matter jurisdiction under § 2241 to examine the conclusion of the INS that Pickett is not eligible for withholding of removal under with § 241(b)(3)(A) or the Torture Convention.

In *Henderson v. INS*, 157 F.3d 106 (2d Cir.1998), the court heard the claims of three lawful permanent residents challenging the BIA's determination that the 1996 Amendments[6] to the Immigration and Naturalization Act could be applied retroactively. The court had before it both petitions for direct review (appeals from BIA decisions directly to the Second Circuit) and appeals from district court rulings on § 2241 petitions. Reaching the conclusion that the Supreme Court in *St. Cyr* would later accept, the *Henderson* court held that although the 1996 Amendments " 'repealed the jurisdiction a court of appeals formerly had over petitions for review filed by aliens convicted of' certain criminal offenses," *id.* at 112 (*quoting Hincapie–Nieto v. INS*, 92 F.3d 27, 28 (2d Cir.1996)), the 1996 Amendments "left untouched the court's jurisdiction under the general habeas statute," *id* (*citing Jean–Baptiste v. Reno*, 144 F.3d 212, 219–220 (2d Cir.1998) and *Hincapie–Nieto*, 92 F.3d at 31). The *Henderson* court then had to determine whether the scope of § 2241 jurisdiction extended to review of the two pending questions: whether the 1996 Amendments' repeal of § 212(c) relief was retroactive, and the legal standard for de-

---

U.S.C. § 1231(a)(1); *Zadvydas*, 533 U.S. at 683, 121 S.Ct. 2491.

**6.** The 1996 Amendments are the various changes to the INA made by the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (1996) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 (1996).

termining length of lawful unrelinquished domicile.

The *Henderson* court concluded that "the law now is much like it was prior to the enactment of the INA and is similar to that which existed under the early statutes that were intended to make these administrative determinations nonreviewable to the fullest extent possible under the Constitution." *Id.* at 119 (citation and internal quotations omitted); *see also St. Cyr,* 533 U.S. at 314 n. 38, 121 S.Ct. 2271 (review under § 2241 is "considerably more limited than ... APA-style review").[7] Against this restrictive standard, the *Henderson* court concluded that the questions presented by these aliens are properly within the scope of the habeas corpus jurisdiction of the federal courts, 157 F.3d at 120 (*citing, inter alia, Goncalves v. Reno,* 144 F.3d 110, 125 (1st Cir.1998)), because "[t]he questions presented by these aliens are one of pure law" and the court was "not called upon in this case to review the agency's factual findings or the Attorney General's exercise of discretion," *id.* at 120 n. 10 (citation omitted).

This is not to say that every statutory claim that an alien might raise is cognizable on habeas. But those affecting the substantial rights of aliens of the sort that the courts have securely enforced—in the face of statutes seeking to limit judicial jurisdiction to the fullest extent constitutionally possible—surely are. The two statutory questions before us today are clearly of this variety, and the district courts had subject matter jurisdiction to consider them.

*Id.* at 122.

The Second Circuit revisited the scope of § 2241 jurisdiction in *Sol v. INS,* 274 F.3d 648 (2d Cir.2001), which involved a petition for habeas review following INS denial of relief under INA § 212(c). While the 212(c) issue in *Henderson* and *St. Cyr* had been whether, as a matter of statutory interpretation, Congress's 1996 repeal of 212(c) relief had retroactive effect, Sol's challenge arose after the INS had considered him for 212(c) relief but denied that relief.[8] The *Sol* court determined that § 2241 review does not extend to "discretionary determinations by the IJ and the

---

7. *Henderson* noted that prior to the enactment of the 1952 Immigration and Nationality Act, "judicial review of immigration decisions proceeded solely by way of the writ of habeas corpus," and that the authority to grant such writs was provided by the direct ancestor of § 2241. 157 F.3d at 112 n. 6. Construing the immigration law applicable before the 1952 Act, the Supreme Court in *Heikkila v. Barber,* 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953), concluded that judicial intervention in deportation cases was precluded except insofar as it was required by the Constitution, *id.* at 235, 73 S.Ct. 603, and that in exercising habeas review:

the function of the courts has always been limited to the enforcement of due process requirements. To review those requirements under the Constitution, whatever the intermediate formulation of their constituents, is very different from applying a statutory standard of review, e.g., deciding 'on the whole record' whether there is substantial evidence to support administrative findings of fact....

*Id.* at 236, 73 S.Ct. 603.

The 1952 Act significantly broadened judicial review of deportation proceedings. *Henderson,* 157 F.3d at 116 ("the scope of review of immigration decisions—particularly executive factual findings—was substantially broadened by the 1952 Act") (citations omitted).

8. The Second Circuit's opinion does not make explicit the grounds for the INS's denial. It notes that "[u]nder Section 212(c) of the INA, the Attorney General had broad discretion to waive the deportation of any criminal alien who demonstrated that he or she had maintained a lawful domicile in the United States for at least seven years and who had not been convicted of an 'aggravated felony' for which he or she served a term of imprisonment of five years or longer." *Id.* at 649 n. 3 (*citing* 8 U.S.C. § 1182(c) (1994) (now repealed)). The opinion noted that Sol "has had several convictions" and that at the hearing in which 212(c) relief was initially considered, "the [IJ] heard testimony from Sol and other witnesses and considered Sol's record of criminal convictions." *Id.* at 649. However, given the

BIA," *id.* at 651, and concluded that the district court lacked subject matter jurisdiction over Sol's § 2241 petition:

> Sol ... does not raise a statutory or constitutional claim. He simply contends that the decisions of the BIA lacked adequate support in the record. While review of purely legal issues does not necessitate reconsideration of "the agency's factual findings or the Attorney General's exercise of her discretion," review of the merits of Sol's petition would involve precisely such reassessment of the evidence. *Henderson,* 157 F.3d at 120 n. 10 (*citing Goncalves v. Reno,* 144 F.3d 110, 125 (1st Cir.1998)). This sort of fact-intensive review is vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors.

*Id.*

The Second Circuit's most recent discussion of the scope of immigration habeas review is found in *Liu v. INS,* 293 F.3d 36 (2d Cir.2002). There, the *pro se* alien petitioned for a writ of habeas corpus under § 2241, alleging "that the government violated her rights under the Due Process Clause and the Equal Protection Clause in connection with her removal proceedings." *Id.* at 41. While the key issue in the case was whether § 2241 remained available for non-criminal aliens (an issue not present in Pickett's case, as Pickett is a criminal alien), *Liu* is relevant because it speaks to the scope of issues cognizable in a § 2241 proceeding. The court held that § 2241 afforded the district court jurisdiction to

hear Liu's claims of constitutional violation in the manner in which the INS proceedings were undertaken:

> We [emphasize] that here, as in *Chmakov [v. Blackman,* 266 F.3d 210 (3d Cir. 2001) ], Liu's petition must not be construed to be seeking review of any discretionary decision made by the Attorney General, *see* 266 F.3d at 215. The INA, as amended, plainly prohibits such review. *See* 8 U.S.C. § 1252(g) ([N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action or action by the Attorney General to [inter alia] execute removal orders....); *Reno v. American–Arab–Anti–Discrimination Comm.,* 525 U.S. 471, 482–484, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (construing § 1252(g)). But insofar as Liu challenges the constitutionality or legality of the BIA's decision dismissing [her] claim for asylum and entering a removal order against her, *Chmakov,* 266 F.3d at 215, her petition raises a pure question of law, *St. Cyr,* 533 U.S. at 298, 121 S.Ct. 2271, cognizable on collateral review. See *Heikkila*[, 345 U.S. at 235–236, 73 S.Ct. 603] (distinguishing judicial review from habeas corpus review and emphasizing that the latter "has always been limited to the enforcement of due process requirements")....

*Id.*

*Liu* must be read so as not to eviscerate the distinction between APA-style review and a habeas proceeding,[9] and prior case law applied to the allegations at issue in

---

court's later statement in the discussion portion of the opinion that "Sol ... does not raise a statutory or constitutional claim [but instead] simply contends that the decisions of the IJ and BIA lacked legal support," *id.* at 651, it is fair to conclude that Sol was challenging the discretionary decision to deny 212(c) relief rather than a conclusion that his convictions rendered him ineligible for such relief.

**9.** For example, assume the INS determines, after weighing the evidence obtained in a hearing with proper procedural safeguards, that an alien is ineligible for asylum because while there is some evidence supporting the alien's claim, the IJ determines that the alien has failed to carry her burden of proof that she suffered past persecution or has a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13 (setting out eligibility for asy-

*Liu* gives context to the *Liu* court's conclusion that challenges to the legality of the BIA's decision dismissing a claim for asylum are pure questions of law cognizable on habeas. *Henderson* holds that a court's jurisdiction to review executive deportation decisions has been scaled back to pre–1952 terms, 157 F.3d at 119–120, and notes that under the finality provisions of the pre–1952 immigration laws, the Supreme Court repeatedly held that "'the conclusiveness of the decisions of immigration officers ... is conclusiveness upon matters of fact,'" *id.* at 115 (*quoting Gegiow v. Uhl*, 239 U.S. 3, 9, 36 S.Ct. 2, 60 L.Ed. 114 (1915)).[10] *St. Cyr* noted that in a pre–1952 habeas action challenging the legality of a deportation order, "other than the question whether there was some evidence to support the order, the courts generally did not review factual determinations made by the Executive." 533 U.S. at 306, 121 S.Ct. 2271 (citations omitted).

Similarly, the facts of *Liu* belie any notion that habeas review extends to APA-style scrutiny of factual determinations. While the court said only that Liu alleged "that the government violated her rights under the Due Process Clause and the Equal Protection Clause in connection with her removal proceedings," at 41, claimed constitutional violations are pure issues of law. If Liu challenged the process employed in the INS's determination (i.e., a claim of lack of counsel or inability to understand the nature of the charges such that an adequate defense could be prepared), *Heikkila* makes clear that such due process concerns are the province of habeas review. 345 U.S. at 236, 73 S.Ct. 603 ("the function of the courts [on habeas] has always been limited to the enforcement of due process requirements"). If Liu's claim of constitutional violation was an assertion that the INS's determination was based on a complete absence of any evidence in the record such that the decision was wholly arbitrary and constituted a denial of due process, such a claim would also be cognizable under § 2241 review. *See United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927) ("Deportation ... on charges unsupported by any evidence is a denial of due process which may be corrected on habeas corpus.") (*citing Chin Yow v. United States*, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369 (1908) and *Kwock Jan Fat v. White*, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010 (1920)); *see also Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) ("In a variety of contexts, the [Supreme] Court has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence.") (citations omitted).[11]

---

lum). If the INS's subsequent decision, based solely on the sufficiency of the evidence at the properly-conducted hearing, to dismiss the application for asylum and enter an order of removal is a "pure question of law" cognizable on habeas, then the federal court deciding whether to issue the writ would be obliged to engage in APA-style determinations as to whether there was substantial evidence on the record or whether the IJ abused his discretion in choosing to credit some testimony over other testimony.

**10.** *See also id.* at 112–116 (summarizing judicial review of immigration cases from 1885 through 1952).

**11.** The facts of *Chmakov*, the Third Circuit case upon which *Liu* heavily relies, are also insufficiently broad to support a conclusion that an APA-style challenge to the INS's decision is a pure question of law cognizable on habeas. The Chmakovs, too, alleged a violation of their constitutional right to due process of law. 266 F.3d at 213 ("The petition alleged that the Chmakovs' Fifth Amendment right to due process had been violated be-

 Taken together, *Henderson, Sol, St. Cyr* and *Liu* stand for the proposition that in order to support subject matter jurisdiction, a § 2241 challenge to a final order of deportation must be more than an APA-style challenge to the sufficiency of the evidence. Pickett's petition fails to advance any allegation sufficient to support § 2241 jurisdiction, as she has advanced no colorable pure issue of law. The record reflects that Pickett was afforded a hearing at which she was represented by counsel, testified and called witnesses on her behalf. She makes no claim that improper evidence was admitted or proper evidence was excluded, that counsel's representation was deficient, that there was no evidence to support the IJ's decision or any claim of bias or arbitrary behavior by the INS.

The Court thus lacks subject matter jurisdiction [12] over Pickett's petition for a writ of habeas corpus. Because the Court lacks subject matter jurisdiction it is unnecessary to address the Government's alternative jurisdictional argument based on the Torture Convention's non-self-executing status.

III.  Conclusion

For the reasons set out above, Pickett's petition [Doc. # 2] is DISMISSED for lack of subject matter jurisdiction. The Government advises that Pickett's deportation is scheduled for June 29, 2002, and no order staying deportation is in effect. Thus, any motion for stay must be directed to the U.S. Court of Appeals for the Second Circuit. No Certificate of Appealabili-

ty is required. *Murphy v. United States,* 199 F.3d 599, 601 n. 2 (2d Cir.1999).

The Clerk is directed to close this case.

---

cause they received ineffective assistance of counsel before the BIA.'').

**12.**  *See Sol,* 274 F.3d at 651–652 (district court lacked subject matter jurisdiction over § 2241 petition that sought prohibited level of review); *Liu,* at 41 (district court had subject matter jurisdiction when petition raised a pure question of law)