Emmanuel J. FOROGLOU,
Petitioner, Appellant,

v.

Janet RENO, Attorney General, Immigration And Naturalization Service, Respondent, Appellee.

Nos. 99–2295, 00–1232.

United States Court of Appeals,
First Circuit.

Heard Feb. 8, 2001.

Decided March 2, 2001.

Pauline M. Schwartz with whom Paul Shearman Allen and Paul Shearman Allen & Associates were on consolidated brief for petitioner.

Ernesto H. Molina, Jr., Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, Department of Justice, with whom David W. Ogden, Assistant Attorney General, Civil Division, and David V. Bernal, Assistant Director, were on consolidated brief for respondent.

Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.

BOUDIN, Circuit Judge.

Emmanuel Foroglou came to the United States from Greece on a student visa in the early 1980's. In October 1993, well after Foroglou had ceased to be a student, the INS began deportation proceedings because Foroglou had no proper visa entitling him to remain. Foroglou then claimed political asylum under section 208(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a) (1994), on the ground that he would be drafted if he returned to Greece and, as a libertarian, he had conscientious objections to involuntary military service.

The immigration judge rejected this claim, as did the Board of Immigration Appeals. We stayed deportation pending appeal but ultimately affirmed the Board, agreeing that Foroglou was not threatened with the draft on account of his views nor would his views affect his treatment if he refused to be drafted. *Foroglou v. INS,*

170 F.3d 68, 71–72 (1st Cir.), *cert. denied*, 528 U.S. 819, 120 S.Ct. 60, 145 L.Ed.2d 53 (1999). Our decision was rendered on March 5, 1999, and the Supreme Court denied *certiorari* on October 4, 1999.

On October 14, 1999, Foroglou asked the Board to reopen the proceeding so that he could apply for relief under the Convention Against Torture,[1] claiming that he would be mistreated if he refused induction. He also sought a stay from the Board pending these proceedings and, on October 19, 1999, filed a habeas corpus action in the district court in Maine to stay deportation. On December 7, 1999, the district court dismissed the habeas petition, and, a day later, the Board denied the stay request. On January 18, 2000, the Board denied Foroglou's motion to reopen.

Foroglou now seeks review of the Board's order declining to reopen his deportation proceeding and he appeals from the dismissal of his habeas action. The Board's order, with which we begin, itself rested upon an earlier directive: after the Convention Against Torture went into effect in this country, the INS issued regulations governing petitions to reopen based on the convention, Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478 (1999) (codified in scattered sections of 8 C.F.R.). The one pertinent here provided that, where a deportation order had become final before March 22, 1999, a petition to reopen had to be filed by June 21, 1999. 8 C.F.R. § 208.18(b)(2) (2000).

Foroglou's order of deportation became final on April 30, 1998, when the Board dismissed his original appeal and denied his motion to remand. Under the INS regulations cited above, Foroglou had until June 21, 1999, to invoke the convention by a petition to reopen. Instead, Foroglou waited until October 14, 1999, to file his petition. The Board's order now before us denied the petition to reopen not on the merits but on the ground that it was patently out of time.

■ On review, Foroglou's main argument is that the Board's time limit on petitions to reopen is itself invalid because it would result in denying relief to deportees who might then suffer torture, contrary to the Convention Against Torture and to the policies embodied in federal legislation and regulations that implement the convention or otherwise protect the rights of aliens. The short answer to this argument is that Foroglou points to nothing in the convention or legislation that precludes the United States from setting reasonable time limits on the assertion of claims under the convention in connection with an ongoing proceeding or an already effective order of deportation. Even in criminal cases, constitutional and other rights must be asserted in a timely fashion. Fed.R.Crim.P. 12(b), (f).

■ Alternatively, Foroglou says that the specific time limit applied here is invalid. The regulations in question were published by the INS on February 19, 1999, and made effective on March 22, 1999, after the required 30 days' notice. 64 Fed.Reg. at 8478. However, as Foroglou points out, the effective date came before completion of the comment period on April 20, 1999. *Id.* Foroglou argues that the INS has not shown the required "good cause" for making a rule effective before the completion of a period of notice and comment. 5 U.S.C. § 553 (1994).

Even assuming there was some debate over the INS's finding of good cause, 64 Fed.Reg. at 8486—a point that we do not

---

1. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85. The United States ratified the convention in 1994 and, in 1998, Congress passed legislation to implement the convention's requirement that "[n]o state ... expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture," *id.* art. 3, § 1. Foreign Affairs Reform and Restructuring Act of 1998 § 2242, Pub.L. No. 105–277, 112 Stat. 2681–761, –822 to –823 (1998) (codified at 8 U.S.C. § 1231 note (Supp. V 1999)).

decide—a requirement that the INS not implement the regulation until the end of the comment period would merely have delayed the effective date by approximately 30 more days—*i.e.,* until April 20, 1999. If the 90–day filing deadline were correspondingly extended, Foroglou would still have had only until late July to file his motion to reopen. Since he did not file until mid-October, it is hard to see how the acceleration of the effective date by 30 days, even if improper, adversely affected him. Foroglou has provided no arguments to contradict this conclusion.

■ Foroglou also says that the time limit should be relaxed or waived in his case because the Supreme Court did not deny his petition for certiorari until October 1999 and he filed his petition with the Board shortly thereafter. Foroglou argues that he did not believe that he was subject to a "final" order of deportation as of March 1999. The order was, of course, final when the Board rejected Foroglou's original appeal, *Pimental–Romero v. INS,* 952 F.2d 564, 564 (1st Cir.1991), but Foroglou says that his asserted good faith should be protected.

This claim, like Foroglou's attacks on the validity of the regulation, was not made to the Board in the petition to reopen or otherwise. As to the validity of the regulation, we have chosen to ignore the government's claim that Foroglou's objections are waived; our reason is that the Board would normally not entertain claims that INS regulations are invalid. *Cf. Brown v. Secretary of Health & Human Servs.,* 46 F.3d 102, 114–15 (1st Cir.1995). But there is no reason why Foroglou could not have presented to the Board his request for a good faith exception, together with adequate supporting evidence, and accordingly we decline to consider the argument. *See Luis v. INS,* 196 F.3d 36, 40 (1st Cir.1999) (issue not raised to the Board is forfeit).

■ This brings us to Foroglou's appeal from the dismissal of his habeas petition.

The district judge dismissed the petition on the ground that it was barred by section 242(g) of the INA, 8 U.S.C. § 1252(g) (Supp. II 1996). This provides that—apart from direct review in the courts of appeals—"no court" has "jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.*

The Supreme Court construed this provision in *Reno v. American–Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482–87, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), to bar an injunction action against the commencement of deportation proceedings; but it has not yet addressed the interplay between the statute and habeas corpus. In the meantime, like other federal courts, we have assumed that, despite section 242(g), habeas is preserved for those who have *no other way* to present on direct review constitutional or other legal challenges to a final order of deportation. *Wallace v. Reno,* 194 F.3d 279, 285 (1st Cir.1999); *Goncalves v. Reno,* 144 F.3d 110, 121 (1st Cir.1998), *cert. denied,* 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999).

In most cases Congress does allow direct review of deportation orders, but it has restricted direct review for those deported on account of certain criminal offenses, INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C) (Supp. II 1996), thereby opening the way to habeas review, *Mahadeo v. Reno,* 226 F.3d 3, 8–10 (1st Cir. 2000), *petition for cert. filed,* 69 U.S.L.W. 3418 (U.S. Dec. 11, 2000) (No. 00–962), and we have assumed *arguendo* that habeas might be available under restrictive conditions if a due process violation frustrated a deportee's right of direct appeal, *Hernandez v. Reno,* 238 F.3d 50, 54 (1st Cir.2001). And where a habeas court has before it a colorable claim for habeas relief, we have held that it may preserve its jurisdiction by granting ancillary relief to stay depor-

tation *pendente lite.* *Wallace,* 194 F.3d at 285.

Foroglou, however, is not being deported for criminal offenses and has had full access to this court for direct review of orders leading to his deportation. The government does not dispute in this case that, subject to the requirements of a timely appeal and preservation of rights, Foroglou can seek direct review (as he has) of the Board's order refusing to reopen. The difficulty is merely that his legal attacks on the order lack merit or have not been preserved; but direct review was certainly available, together with a stay *pendente lite* from this court.

Under these circumstances, it is hard to view the habeas petition to the district court as anything other than an attempt, contrary to section 242(g), to prevent the Attorney General from "execut[ing][a] removal order[ ]." In all events, we have now resolved, or found unpreserved, the only extant legal objections to the Board's order. Thus, even if the original habeas action had had some warrant as a means to enable review of the Board's order—and there is no indication that it did—it is no longer needed for that purpose.

Foroglou argued in the district court that the INS should be required to allow him to depart voluntarily. Often, in issuing a final order of deportation, the INS will in the alternative allow the alien to depart voluntarily—say, within 30 days— to any destination that will accept him. The INS so provided in Foroglou's original deportation order and renewed the option at least once. Although Foroglou requested a further renewal in October 1999, the INS has declined to grant the request, apparently because Foroglou failed to show that any country other than Greece would accept him.

The government said in the district court that its refusal to grant voluntary departure is itself unreviewable;[2] in this court it adds that Foroglou has now abandoned the voluntary departure issue by failing to raise it in his opening brief, *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 354 (1st Cir.1992). Foroglou in turn has apparently renewed the voluntary departure request in his reply brief. It will save time simply to say that Foroglou has provided no basis for thinking voluntary departure would be fruitful, even if we assumed *arguendo* that there was some basis for judicial review of the denial.

The appeal from the Board's order refusing to reopen is *denied,* and the district court's judgment dismissing the habeas proceeding is *affirmed.* Our stay of deportation is *vacated.*

*It is so ordered.*

---

2. For this position it cited its own regulation, which describes the decision to reinstate or extend time for voluntary departure as "within the sole jurisdiction of the district director," 8 C.F.R. § 244.2 (1995) (the current version appears at 8 C.F.R. § 240.26(f) (2000)), and a statute barring court stays of alien removal "pending consideration of any claim with respect to voluntary departure," INA § 240B(f), 8 U.S.C. § 1229c(f) (Supp. II 1996).