**Ebenezer ARLOO Petitioner**

v.

**John ASHCROFT, Attorney General, et al, Respondents**

**No. CIV.A. 02–30136–MAP.**

United States District Court, D. Massachusetts.

Jan. 8, 2003.

---

Michael G. Moore, Springfield, for Ebenezer Arloo, Petitioner.

Karen L. Goodwin, United States Attorney's Office, Springfield, Frank Crowley, Immigration and Naturalization Service, Boston, for John Ashcroft, Attorney General, Fred McDonald, Sheriff, Respondents.

## MEMORANDUM REGARDING REPORT AND RECOMMENDATION ON RESPONDENTS' MOTION TO DISMISS (Docket No. 4)

PONSOR, District Judge.

Petitioner, a citizen of Ghana awaiting deportation, has brought this petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241, arguing that his claim of political asylum was wrongly denied. The respondents filed a Motion to Dismiss, arguing, first, that petitioner had waived his right to *habeas* review by failing to seek an appeal of the order denying his asylum claim from the First Circuit Court of Appeals. The respondents argued, moreover, that even assuming that *habeas* review was permitted, the petition itself demonstrated a complete lack of any colorable claim of any due process violation in the proceedings before the Immigration Judge.

The respondents' motion was referred to Magistrate Judge Kenneth P. Neiman who recommended that it be denied. For the reasons set forth below, the court will decline to adopt this recommendation and will allow the respondents' Motion to Dismiss.

Judge Neiman's Report and Recommendation, appended hereto as Exhibit A, sets forth an excellent summary of the background to this case. Lengthy discussion will not be necessary to explain this court's two reasons for allowing the Motion to Dismiss.

First, the petitioner waived his right to *habeas* review by failing to exhaust his appellate remedy before the

First Circuit Court of Appeals. The First Circuit has indicated that a *habeas corpus* action filed after abandonment of an available statutory judicial review before the Court of Appeals is barred by 8 U.S.C. § 1252(d). *Foroglou v. Reno,* 241 F.3d 111, 115 (1st Cir.2001). *Habeas* relief is proper only when there is *"no other way"* to present a legal challenge to a deportation order. *Id.,* at 114 (emphasis in original). This holding was not affected by the Supreme Court's decision in *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), which involved a petitioner who was a *criminal* alien who was ineligible to obtain judicial review of a removal order before the Court of Appeals. *See* 8 U.S.C. § 1252(a)(2)(C). Petitioner in this case is not a criminal alien. He had a full opportunity to obtain review of the INS decision by the Court of Appeals, but chose not to take it. Petitioner has offered no explanation for his failure to exercise this clear avenue of judicial review; the decision simply to decline that approach and proceed via *habeas* review in this court seems capricious. Given the First Circuit's recognition, in the several cases noted by the respondents, that judicial exhaustion and waiver rules "govern on direct review of BIA final orders," *Mattis v. Reno,* 212 F.3d 31, 41 (1st Cir.2000), the out of circuit precedent offered by the petitioner is unpersuasive. *But see Liu v. INS,* 293 F.3d 36 (2nd Cir.2002), *Chmakov v. Blackman,* 266 F.3d 210 (3rd Cir.2001).

■ Even if *habeas* review were available, the court would still allow the Motion to Dismiss, since the basis for a due process violation has not been adequately set forth in the petition. The Magistrate Judge cogently discussed and disposed of petitioner's first two due process claims. The BIA clearly had the right to summarily affirm the Immigration Judge's decision, and the Immigration Judge's consideration of the lack of harm to the petitioner's family in Ghana was proper. This court adopts the Magistrate Judge's findings and reasoning on these two points.

■ The cursory reference by the Immigration Judge to parallel deportation proceedings against the petitioner's wife provides no adequate basis for further pursuit of this *habeas* petition. A review of the record reveals that consideration of the proceedings relating to petitioner's wife played only a very minor part in the Immigration Judge's decision. To the extent it did play some part, this consideration was not inappropriate, given that petitioner's wife was present at and testified during petitioner's immigration proceedings, and the arguments related to her deportation in some ways paralleled his own contentions.

In sum, both for jurisdictional and substantive reasons, this petition must be dismissed. The respondents' Motion to Dismiss is therefore hereby ALLOWED.

The respondents have recently filed a "Notice of Intent to Execute Deportation Order" (Docket No. 13), stating their intention to "execute the final order of deportation against petitioner" *on or after January 15, 2003.*" (Emphasis in original). To the extent that the petitioner wishes to take an appeal to the First Circuit of this Order dismissing his *habeas* petition, an appropriate Motion to Stay must be filed immediately. Without action from the petitioner, this court does not intend to proceed *sua sponte,* and the petitioner's deportation may go forward in the timeframe described by the respondents.

A separate Order will issue.

### ORDER

For the reasons stated in the accompanying Memorandum, respondents' Motion to Dismiss (Docket No. 4) is hereby AL-

LOWED. To the extent that the petitioner wishes to take an appeal to the First Circuit Court of Appeals of this Order dismissing his *habeas* petition, an appropriate Motion to Stay must be filed immediately. Without action from the petitioner, this court does not intend to proceed *sua sponte*, and the petitioner's deportation may go forward on or after January 15, 2003 as respondents have indicated.

It is So Ordered.

## REPORT AND RECOMMENDATION WITH REGARD TO RESPONDENTS' MOTION TO DISMISS (Docket No. 4)

NEIMAN, United States Magistrate Judge.

Ebenezer Arloo ("Petitioner"), a citizen of Ghana awaiting deportation, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In essence, Petitioner argues that, on May 2, 2002, the Board of Immigration Appeals ("BIA"), in summarily adopting the decision of an immigration judge, wrongly denied his claim of political asylum. Respondents' motion to dismiss the petition has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b). For the reasons indicated below, the court will recommend that Respondents' motion to dismiss be denied.

### I. BACKGROUND

The court has cobbled together this factual background from the sparse record before it. The facts and reasonable inferences are stated in a light most favorable to Petitioner, the party opposing dismissal. *See Kiely v. Raytheon Co.,* 105 F.3d 734, 735 (1st Cir.1997).[1]

Petitioner was born in Ghana on May 9, 1963. (IJ's Decision at 2.) In 1991, he married another Ghanian, Jacqueline Arloo. (*Id.*) On February 2, 1995, Petitioner was admitted to the United States as a visitor with a non-immigrant visa valid until February 20, 1995. (*Id.* at 2, 8.) When Petitioner overstayed, the Immigration and Naturalization Service ("INS") issued a "show cause" deportation order. (See *id.* at 1–2.) The order charged that Petitioner was removable under Section 241(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(B) (1995) (currently codified at 8 U.S.C. § 1227(a)(1)(B) (2002)), as a non-immigrant alien who had remained in the country longer than permitted. (See *id.* at 1.)

Petitioner applied for various forms of relief—namely, asylum, withholding of deportation, and voluntary departure—and had a deportation hearing before an immigration judge ("IJ") in Boston. (See *id.* at 1.) It appears from the IJ's Decision dated July 11, 1997, that Petitioner's hearing occurred on either September 26, 1996, or February 27, 1997. (See *id.* at 16, 18.) However, it is possible that either or both of those dates pertain to a hearing with respect to Petitioner's wife. At oral argu-

---

1. The court has not been provided with a complete copy of Petitioner's immigration file, but only three habeas exhibits: (1) the immigration judge's July 11, 1997 "Oral Decision" denying Petitioner's asylum claim (hereinafter the "IJ's Decision"), which is attached to Respondents' Brief (Docket No. 5); (2) Petitioner's April 27, 1999 Brief to the BIA in Opposition to the Immigration Judge's Decision, which is attached to Petitioner's Memorandum in Support of Habeas Petition and Motion for Stay (hereinafter "Petitioner's Habeas Brief") (Docket No. 2); and (3) the BIA's May 2, 2002 Per Curiam Order adopting the Immigration Judge's decision (hereinafter the "BIA Order"), which is attached to both Respondents' Brief and Petitioner's Habeas Brief. The court also notes that many of the so-called "facts" are themselves actually summaries by either the immigration judge or Petitioner's counsel.

ment, neither party could supply any pertinent dates with respect to Jacqueline Arloo's immigration proceedings.[2]

In any event, it is clear from his decision that the IJ denied Petitioner's request for asylum and withholding of deportation, but granted him the right to either voluntarily depart the United States by October 14, 1997, or be deported thereafter. (See *id.* at 24.) Petitioner appealed the IJ's Decision to the BIA and, on April 27, 1999, filed a memorandum of law. (Petitioner's Habeas Brief, Exhibit.) In a short per curiam order dated May 2, 2002, the BIA, acting through a single board member, "affirm[ed], without opinion, the results of the decision below" and, thus, made the IJ's decision "the final agency determination." (BIA Order.) The BIA Order went on to state that Respondent would be deported unless he voluntarily left the United States within thirty days, that is, by early June, 2002. (*Id.*)

Petitioner, it appears, took no further action until August 26, 2002, when he filed this habeas petition. On October 28, 2002, Respondents filed the instant motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). In due course, Petitioner submitted an opposition memorandum and Respondents tendered a reply brief. The court heard oral argument on December 13, 2002.[3]

## II. STANDARDS OF REVIEW

Under both Rule 12(b)(6) and Rule 12(b)(1), the court must take as true the well-pleaded facts as they appear in the petition and habeas exhibits, extending the petitioner every reasonable inference in his favor. *See Kiely*, 105 F.3d at 735; *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994). *See also Rasheed v. Duval*, 57 F.3d 1061, 1995 WL 365994, at *1 (1st Cir. June 19, 1995) (unreported) (habeas exhibits used in framing petition are part of the pleadings and may be considered on motion to dismiss). Pursuant to Rule 12(b)(6), the court may grant dismissal if "it appears beyond doubt that the [petitioner] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Accord Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987). Under Rule 12(b)(1), the petitioner, the party invoking jurisdiction, has the burden of proof to establish its existence, *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995), and "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action," Fed. R.Civ.P. 12(h)(3).

## III. DISCUSSION

Respondents make three arguments in support of their motion to dismiss: (1) that the court lacks subject matter jurisdiction in this habeas action because Petitioner abandoned his statutorily prescribed avenue for direct judicial review by the First Circuit Court of Appeals; (2) that, even if habeas review is available, the court may only review "colorable claims of legal er-

---

**2.** Viewed in a light most favorable to Petitioner, the IJ's Decision establishes the following dates with respect to Jacqueline Arloo: in March of 1995, she was allegedly persecuted in Ghana for expressing her political views; sometime after March 24, 1995, she entered the United States on a false passport; on September 5, 1995, an immigration judge denied her asylum request; and on December 18, 1996, the BIA upheld that decision. (See IJ's Decision at 11, 15–17.) There is no indication from the file when (or if) Ms. Arloo was actually deported.

**3.** Since Petitioner is currently in custody, the court has expedited this report and recommendation.

ror" and Petitioner raises no such claim; and (3) that review of the IJ's factual findings is unavailable. The first argument is jurisdictional and, therefore, arises under Rule 12(b)(1). The second and third arguments go to the merits and, accordingly, arise under Rule 12(b)(6). In the end, the court suggests that subject matter jurisdiction exists and the petition adequately states a claim upon which relief may be granted.

### A. Subject Matter Jurisdiction

With regard to Respondents' jurisdictional argument, the parties agree that the transitional rules enacted by the Illegal Immigrant Responsibility and Immigration Reform Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (1996), apply. *See Qureshi v. Ashcroft,* 2002 WL 31160101, at *2 (3d Cir. Sep. 30, 2002) (unreported) (where final order of deportation was issued after October 31, 1996 and immigration proceedings commenced before April 1, 1997 IIRIRA's transitional rules apply). Pursuant to those rules, a petition for judicial review of a BIA decision "shall be filed with the court of appeals for the judicial circuit in which the administrative proceedings before the special inquiry officer or immigration judge were completed," IIRIRA § 309(c)(4)(D), and "must be filed not later than 30 days after the date of the final order of exclusion or deportation," IIRIRA § 309(c)(4)(C). The parties further agree that Petitioner had thirty days from May 2, 2002, to seek judicial review in the First Circuit Court of Appeals, but failed to do so.

Given these facts, Respondents argue that, under *Foroglou v. Reno,* 241 F.3d 111 (1st Cir.2001), and *Mattis v. Reno,* 212 F.3d 31 (1st Cir.2000), Petitioner's failure to seek direct review by the First Circuit in a timely manner dooms his habeas peti-

tion as well. In response, Petitioner argues that *Foroglou* and *Mattis* were "trumped" by *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), which, he maintains, holds that the habeas writ continues to be available for all deportable aliens. In turn, Respondents acknowledge *St. Cyr,* but contend that it and a companion case, *Calcano–Martinez v. INS,* 533 U.S. 348, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001), apply only to "criminal" aliens—those subject to criminally-based orders of removal—not to "asylum" aliens such as Petitioner.

Although none of the cases cited are directly on point, Respondents' reliance on *Foroglou* and *Mattis* is superficially appealing. In *Foroglou,* the First Circuit held that, under rules that appear to parallel IIRIRA, an asylum alien could not use a habeas petition to challenge deportation since, unlike criminal aliens, he could seek direct review of the deportation order in the court of appeals: "[W]e have assumed that ... habeas is preserved for those who have *no other way* to present on direct review constitutional or other legal challenges to a final order of deportation[,] ... [but] Foroglou ... is not being deported for criminal offenses and has had full access to this court for direct review of orders leading to his deportation." *Id.,* 241 F.3d at 114–15 (emphasis in original). *See also Mattis,* 212 F.3d at 41 ("Traditional rules regarding exhaustion and waiver [which] govern on direct review of BIA final orders ... [also] hold on habeas review, which we have suggested is less broad than direct review."). To be sure, Respondents concede that, after both *Foroglou* and *Mattis* were decided, the Supreme Court held in *St. Cyr* and *Calcano–Martinez* that "jurisdiction stripping" immigration statutes do not preclude certain aliens from pursuing habeas relief. *See St. Cyr,* 533 U.S. at 314, 121 S.Ct. 2271; *Calcano–Martinez,* 533 U.S. at 351–52, 121

S.Ct. 2268. Respondents argue, however, that *St. Cyr* and *Calcano–Martinez* do not apply to *asylum* aliens like Petitioner who, unlike *criminal* aliens, continue to have direct appeal rights in the courts of appeals.

Respondents' argument to the contrary, the court believes that the Supreme Court's reasoning in *St. Cyr* and *Calcano–Martinez* may be applied to asylum aliens as well as criminal aliens. Thus, even through an asylum alien has lost his direct right of review by failing to appeal an adverse BIA decision to the court of appeals within thirty days, the district court still has "habeas" jurisdiction—which, after all, provides a narrower scope of inquiry than direct review—in an appropriate case. This very interpretation of *St. Cyr* and *Calcano–Martinez* was recently reached by both the Second and Third Circuits. *See Liu v. INS*, 293 F.3d 36 (2d Cir.2002); *Chmakov v. Blackman*, 266 F.3d 210 (3d Cir.2001). *Cf. Leitao v. Reno*, 311 F.3d 453, 455 (1st Cir.2002) (observing that, on other grounds, "*St. Cyr* . . . superceded the *Mattis* rule with a more liberal one . . .").

Speaking first, the Third Circuit held in *Chmakov* "that Congress has preserved the right to habeas review for both criminal and non-criminal aliens," *id.*, 266 F.3d at 215, a holding later adopted by the Second Circuit in *Liu*, 293 F.3d at 41. Recognizing the dire consequences that could redound from the elimination of habeas jurisdiction, both courts determined that the repeal of habeas jurisdiction, if intended by Congress, must be done via "a clear an unambiguous statement," a statement absent in IIRIRA with respect to asylum aliens. *See id.* at 40 (quoting *St. Cyr*, 533 U.S. at 305, 121 S.Ct. 2271); *Chmakov*, 266 F.3d at 215 ("The Supreme Court has held that [IIRIRA has] a particular meaning, and that meaning does not indicate a congressional intent to repeal habeas jurisdiction. It simply cannot be that the meaning will change depending on the background or pedigree of the petitioner."). Simply stated, *Liu* and *Chmakov* stand for the proposition, with which this court agrees, that an asylum alien does not forfeit his right to file a habeas petition in a district court just because he had the right to seek direct review in the courts of appeals. Accordingly, the court believes that Respondents' jurisdictional argument should be rejected.

### B. *Merits*

Respondents' remaining arguments go to the merits. Basically, Respondents contend that a habeas court may review only "colorable claims of legal error" such as statutory or constitutional "pure" issues of law, *see Carranza v. INS*, 277 F.3d 65, 71–72 (1st Cir.2002), and that Petitioner makes no such claim here. In opposition, Petitioner acknowledges that habeas review is limited to such "colorable claims," but argues that the "essence" of his petition, does raise "pure" claims of law. For its part, the court believes that Petitioner has the better argument and finds that the instant petition adequately pleads at least one colorable claim of legal error and, therefore, sufficiently states a claim upon which relief may be granted.

Petitioner appears to assert three claims of legal error. First, he asserts "that he has been denied due process of law because of the lack of [substantive] review by the . . . BIA." (Petitioner's Brief at 2.) According to Petitioner, the BIA's "one sentence summary affirmation of the decision below . . . is appropriate only when the decision is controlled by BIA precedent or where factual and legal questions raised are insubstantial." (*Id.*) Apparently, Petitioner believes that the IJ's decision raised a "substantial" due process question

not covered by precedent, and, thus, required more than a summary dismissal by the BIA. (See *id.* at 4–5 ("Petitioner does not seek to have the determination by the BIA reversed, but rather to have the case remanded so that his arguments will be adequately considered.").)

To the extent that Petitioner is challenging as a due process violation the BIA's very ability to issue a summary order, that claim, in the court's opinion, does not rise to the "colorable" level necessary for habeas review. The regulation upon which Petitioner relies gives the BIA the very right to issue a summary affirmation signed by one board member, so long as that board member determines that (1) the result reached in the IJ's decision was "correct," (2) any errors were "harmless or nonmaterial," and (3) the issues raised are "squarely controlled by existing ... precedent and do[ ] not involve the application of precedent to a novel fact situation" or that the factual and legal questions "are so insubstantial that three-Member review is

not warranted." 8 C.F.R. § 3.1(a)(7) (2002).[4] While Petitioner might well prefer that the individual board member articulate his or her findings before summarily affirming an IJ's decision, no such requirement is set forth by regulation or otherwise and the court is unwilling to suggest that such a requirement be imposed. As the Supreme Court has made clear, "administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 543, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). *See also Sevilla v. INS*, 2002 WL 464635, at *2 (9th Cir. Mar. 20, 2002) (unreported) ("the BIA is entirely within its regulatory authority in deciding to issue a streamlined decision").

Petitioner's Habeas Brief, however, illuminates two more *specific* "legal" claims:

4.  In full, the regulation, entitled "Affirmance without opinion," states as follows:

    (i) The Chairman may designate, from time-to-time, permanent Board Members who are authorized, acting alone, to affirm decisions of Immigration Judges and the Service without opinion. The Chairman may designate certain categories of cases as suitable for review pursuant to this paragraph.

    (ii) The single Board Member to whom a case is assigned may affirm the decision of the Service or the Immigration Judge, without opinion, if the Board Member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that

      (A) the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation; or

      (B) the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted.

    (iii) If the Board Member determines that the decision should be affirmed without opinion, the Board shall issue an order that reads as follows: "The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination. See 8 CFR 3.1(a)(7)." An order affirming without opinion, issued under authority of this provision, shall not include further explanation or reasoning. Such an order approves the result reached in the decision below; it does not necessarily imply approval of all of the reasoning of that decision, but does signify the Board's conclusion that any errors in the decision of the Immigration Judge or the Service were harmless or nonmaterial.

    (iv) If the Board Member determines that the decision is not appropriate for affirmance without opinion, the case will be assigned to a three-Member panel for review and decision. The panel to which the case is assigned also has the authority to determine that a case should be affirmed without opinion.

Petitioner's attorney filed a lengthy brief that was apparently ignored by the BIA[.] ... As that document indicates, the IJ denied Petitioner asylum for two basic reasons. First, because his family in Ghana had not been harmed. [sic] That consideration has been specifically addressed by the courts and found not to be relevant. *Hartooni v. INS*, 21 F.3d 336, 342 (9th Cir.1994).

The second reason for denial was that Petitioner's wife's case had been separately and previously denied. That assumption, that the denial of her claim also vitiated Petitioner's claim, violated his right to procedural due process. From the wording of the BIA decision, it is impossible to ascertain the position of that court as to these issues.

(Docket No. 2 at 1–2.) The court will address these claims in turn.

Petitioner's first claim—that the IJ improperly considered that his family in Ghana had not been harmed—can be disposed of in short order. That issue hardly appears to be a "pure" legal question suitable for habeas review. Petitioner's argument to the contrary, the First Circuit has repeatedly allowed the INS to weigh the living situation of asylum aliens' homeland relatives. *See Velasquez v. Ashcroft*, 305 F.3d 62, 66–67 (1st Cir.2002) (refusing to disturb findings by immigration judge and BIA that "numerous relatives of the petitioners have lived, undisturbed, in Guatemala for the past twenty years"); *Aguilar–Solis v. INS*, 168 F.3d 565, 573 (1st Cir.1999) ("[T]he fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return.").

In contrast, the court does not believe that Petitioner's second claim—that the IJ violated due process by considering the denial of Jacqueline Arloo's asylum claim as grounds for rejecting Petitioner's own

application—can be resolved via Respondents' motion to dismiss. In essence, the court suggests that the instant habeas petition states a colorable procedural due process claim upon which relief may be granted and, thus, ought not be prematurely dismissed, particularly given the federal rules' relatively modest pleading requirements. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (citations omitted). *Accord Saakian v. INS*, 252 F.3d 21, 24 (1st Cir.2001). To be sure, deportation is a civil, not a criminal, proceeding and, as such, the Confrontation Clause does not apply. *Emile v. INS*, 244 F.3d 183, 189 (1st Cir.2001). However, the immigration statutes grant aliens the right "to present evidence on [their] own behalf and to cross-examine witnesses presented by the Government." *Ladha v. INS*, 215 F.3d 889, 904 (9th Cir.2000) (citing parallel pre- and post IIRIRA provisions, 8 U.S.C. § 1252(b)(3) (1994), and 8 U.S.C. § 1229a(b)(4)(B)). *See also Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir.1998) (similar). Aliens, the Supreme Court has explained, have procedural due process rights which must be strictly protected:

"Here the liberty of an individual is at stake.... We are dealing here with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he

is deprived of that liberty not meet the essential standards of fairness."

*Saakian,* 252 F.3d at 24 (quoting *Bridges v. Wixon,* 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945)).

Given the present record, the court is unable to gauge whether Petitioner was afforded procedural due process. Viewing the few facts presented in a light most favorable to Petitioner, it appears that the IJ may have either co-mingled evidence from Jacqueline Arloo's asylum application with Petitioner's. or, perhaps, denied Petitioner the opportunity to cross-examine individuals involved with his wife's case. (See, e.g., IJ's Decision at 12–16 (discussing Jacqueline Arloo's application, sworn statement and BIA file) and 21–22 (concluding, inter alia, that Petitioner "has not established that if he were to return to Ghana ... he would be persecuted ... *based on what is contained in the Immigration Judge's decision concerning [Petitioner]'s wife's asylum application and the [BIA's] decision*" with respect thereto) (emphasis added).) Either scenario would arguably violate Petitioner's procedural due process rights.

Moreover, as described, the court has only a partial INS file. Indeed, at oral argument, the parties were unable to supply a number of key dates and facts. Accordingly, the court believes that Petitioner ought to be allowed to pursue his due process claim, if not through full-blown discovery, then at least with the benefit of a complete administrative record. *See* 8 U.S.C. § 1229a(b)(4)(C) ("[A] complete record shall be kept of all testimony and evidence produced at the [administrative] proceeding."). *Cf. Saint Fort v. Ashcroft,* 223 F.Supp.2d 343, 346 (D.Mass.2002) (Sterns, J.) (remanding case where BIA, like the court, may not have "ha[d] before it ... the exhibits or a transcript of the testimony on which the IJ relied").[5]

## IV. CONCLUSION

For the reasons stated, the court believes that habeas jurisdiction exists and that, based on the present record, the petition adequately states a colorable due process claim upon which relief may be granted. Accordingly, the court recommends that Respondents' motion to dismiss be DENIED.[6]

---

5. With respect to Respondents' third argument—that Petitioner is using this proceeding to improperly attack the IJ's factual findings—the court believes, as the case now stands, that Petitioner's due process claim is a "pure" question of law. Of course, as Petitioner is aware, should the court ultimately determine that he is really seeking review of "factual or discretionary determinations made by the INS," it would have to dismiss the case. *See Sawan v. Farquaharson,* 2002 WL 1465771, at *1 (D.Mass. July 8, 2002) (Sterns, J.) (citing *Carranza,* 277 F.3d at 71, and *Sol v. INS,* 274 F.3d 648, 650 (2d Cir. 2001)).

6. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st

Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.