**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**August 5, 2025**

**FOR THE TENTH CIRCUIT**

**Christopher M. Wolpert**
**Clerk of Court**

_____

SIMON CHAVEZ-GOVEA,

Petitioner,

v.

No. 24-9551

PAMELA J. BONDI, United States
Attorney General,

Respondent.

_____

**PETITION FOR REVIEW FROM AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS**

_____

Tiffany Elizabeth Wang (Tess Margaret Hellgren and Rachel Landry with
her on the briefs), Innovation Law Lab, Portland, Oregon, for Petitioner.

Liza S. Murcia, Attorney (Anthony Cardozo Payne, Assistant Director,
with her on the briefs), U.S. Department of Justice, Civil Division, Office
of Immigration Litigation, Washington, D.C., for Respondent.

_____

Before **BACHARACH**, **PHILLIPS**, and **FEDERICO**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This petition involves immigration proceedings. In these

proceedings, a noncitizen can ordinarily request asylum, withholding of

removal, or deferral of removal. *Singh v. Bondi*, 130 F.4th 848, 857 (10th

Cir. 2025). But an immigration judge can place a reasonable time limit on the request. *Foroglou v. Reno*, 241 F.3d 111, 113 (1st Cir. 2001).

The reasonableness of a time limit presents two issues here:

1. Is fifteen days a reasonable period for noncitizens to complete a form requesting asylum, withholding of removal, or deferral of removal?

2. Does the immigration judge need to grant continuances when noncitizens seek extra time based on their earlier inattention?

We consider these questions based on the circumstances, which include the immigration judge's disclosure of a right to legal representation, identification of legal representatives willing to work for free or at a reduced rate, and confirmation that the noncitizen wishes to proceed without an attorney. In these circumstances, fifteen days could suffice when a noncitizen attributes the delay to his or her own inattention at an earlier hearing. Given that inattention at the earlier hearing, an immigration judge could deem a continuance unwarranted.

**1.    The immigration judge finds waiver based on a noncitizen's delay in seeking relief.**

The noncitizen, Mr. Simon Chavez-Govea, was subject to removal. Nonetheless, he could seek relief through asylum, withholding of removal, or deferral of removal. *Singh v. Bondi*, 130 F.4th 848, 857 (10th Cir. 2025). So when Mr. Chavez-Govea appeared for his first hearing, he was told that he had fifteen days to seek these forms of relief.

2

If Mr. Chavez-Govea were to seek relief, he could bring an attorney. *See* Part 4, below. So the immigration judge told Mr. Chavez-Govea about this right and provided a list of legal representatives who work for free or at a reduced rate. Mr. Chavez-Govea said that he would represent himself and wanted only to consult a deportation officer about leaving the country voluntarily.

Mr. Chavez-Govea changed his mind by the time of the second hearing. At that hearing, Mr. Chavez-Govea requested a continuance, admitting his prior inattention: "Someone from Las Americas was helping me out but the truth is that I didn't really pay that much attention [to the deadline]. I'm sorry." R. at 439–40. Despite this admission, the immigration judge asked Mr. Chavez-Govea about facts that might support asylum, withholding of removal, or deferral of removal. After getting answers, the immigration judge concluded that Mr. Chavez-Govea had waived his right to seek these forms of relief.

## 2.     The Board didn't err in upholding a 15-day deadline.

The threshold question is whether 15 days was enough time for Mr. Chavez-Govea to submit the form for asylum, withholding of removal, or deferral of removal. The Board of Immigration Appeals determined that 15 days was reasonable, and we review that determination under the abuse-of-discretion standard. *See Banuelos v. Barr*, 953 F.3d 1176, 1179 (10th

3

Cir. 2020).[1] In applying this standard, we consider the parties' arguments involving the complexity of the form, the availability of help for Mr. Chavez-Govea, and his attentiveness.

Mr. Chavez-Govea characterizes the form as complicated, particularly because his native language is Spanish. Given the language barrier, the immigration judge

- obtained simultaneous translation between English and Spanish,

- warned that a failure to submit the form at the second hearing would constitute a waiver,

- offered to answer questions about the form, and

- told Mr. Chavez-Govea that the form required an explanation of harm experienced in Mexico, who had inflicted that harm and why, and what would happen if he returned to Mexico.

With this explanation, the immigration judge asked Mr. Chavez-Govea if he had any questions. His only question was whether he might qualify for voluntary departure. In these circumstances, the Board didn't abuse its discretion by determining that the 15-day period had provided enough time. *See In re R-C-R-*, 28 I. & N. Dec. 74, 78–79 (BIA 2020)

---

[1]    Mr. Chavez-Govea also urges a legal error, stating that the Board didn't acknowledge the standard of good cause for a continuance. *See* 8 C.F.R. § 1003.29 (allowing continuances when "good cause" is shown). It's true that the Board didn't use the term *good cause*. But the Board explained that (1) the immigration judge had set a reasonable time-period and (2) Mr. Chavez-Govea had chosen not to comply because he expected to get another continuance. We have little reason to think that the Board failed to recognize and apply the standard of good cause.

(upholding a denial of an extension of time absent a reasonable explanation when the immigration judge had warned that a failure to timely file would waive relief).

### 3.     The Board didn't err in upholding the denial of a continuance.

Mr. Chavez-Govea also argues that the Board should have overturned the denial of a continuance. For this argument, we again apply the abuse-of-discretion standard. *See Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1297 (10th Cir. 2011).[2]

When Mr. Chavez-Govea appeared for the second hearing, he hadn't completed the form. So he requested "a little more time." R. at 439. To evaluate that request, the immigration judge asked Mr. Chavez-Govea why he needed more time. Mr. Chavez-Govea answered that he hadn't "really [paid] that much attention" at the earlier hearing. *Id.* at 440. Given his inattention at the first hearing, the immigration judge could reasonably decline the request for extra time.

Rather than deny the request immediately, however, the immigration judge explored potential grounds for asylum, withholding of removal, and

---

[2]     Mr. Chavez-Govea also argues that the Board abused its discretion by concluding that he (1) had abandoned his claim for relief and (2) had failed to demonstrate good cause for a continuance. But abandonment turns on whether Mr. Chavez-Govea failed to show good cause for a continuance. So our analysis of good cause effectively resolves the separate challenge to a finding of abandonment.

deferral of removal. After obtaining an explanation of these grounds, the immigration judge denied the request for more time. The Board upheld this denial, and that determination fell within the Board's realm of discretion.[3]

Mr. Chavez-Govea points out that he stated that he had been confused about the instructions in the first hearing. But he made this statement only after the immigration judge had already ruled.[4] When the immigration judge ruled, he knew that he had explained the 15-day deadline, had warned that the failure to file the application within 15 days would waive relief, had offered to explain the form, had asked if there were any questions, and had learned that Mr. Chavez-Govea attributed his delay to his own inattention. Given these circumstances, the Board could reasonably decline to grant a continuance based on Mr. Chavez-Govea's failure to show diligence.[5]

---

[3]　Mr. Chavez-Govea argues that the Board incorrectly held that he had needed to file a motion to extend the deadline. We need not address this argument because the Board's other reasons were proper and independent. *See* p. 4 n.1, above.

[4]　After the hearing, Mr. Chavez-Govea also stated that he had "heard from lots of other detainees that [the immigration judge] does not make people turn in their [form] until their third hearing." R. at 350. This statement suggests that Mr. Chavez-Govea understood the deadline, but failed to comply because he expected to get more time.

[5]　Mr. Chavez-Govea argues that the immigration judge improperly considered the merits of Mr. Chavez-Govea's claim in denying a continuance. But the Board separately treated Mr. Chavez-Govea's delay as a waiver of the right to seek relief. So we don't need to decide whether the immigration judge properly considered the merits of Mr. Chavez-Govea's

**4.      The Board didn't err in concluding that Mr. Chavez-Govea had not been deprived of his right to counsel.**

Mr. Chavez-Govea claims that the immigration judge not only failed to provide enough time, but also denied him a right to counsel. This claim blurs the right of a noncitizen to legal representation. A noncitizen can be represented by an attorney. 8 U.S.C. §§ 1229a(b)(4)(A), 1362. But there's no mechanism for the government to pay the attorney. *See id.* So noncitizens must hire their own attorneys. *See id.*

The immigration judge

- explained to Mr. Chavez-Govea that he could bring a legal representative and

- provided a list of legal providers who waive or reduce their fees in immigration matters.

In fact, Mr. Chavez-Govea said that he was getting legal help from a group called *Las Americas*. But he argues that the immigration judge should have done more at each hearing.

In part, Mr. Chavez-Govea argues that his waiver at the initial hearing hadn't been knowing and voluntary. This argument lacks record support. At the first hearing, the immigration judge informed Mr. Chavez-Govea and others that they "ha[d] the right to be represented by an

---

claim. *See Zzyym v. Pompeo*, 958 F.3d 1014, 1033–34 (10th Cir. 2020) ("[W]e can uphold administrative action when an agency gives two independent reasons and only one of them is valid.").

attorney or a qualified representative of [the noncitizen's] own choosing but at no expense to the Government. Essentially, what that means is that [the noncitizen] can have an attorney if [the person would] like but [the person] would have to provide [his or her] own attorney." R. at 423. Mr. Chavez-Govea responded that he understood. *Id.* at 428. The immigration judge then asked if Mr. Chavez-Govea wanted more time to find an attorney. *Id.* at 428–29. Mr. Chavez-Govea responded that he wanted to represent himself. *Id.* at 429. In light of the immigration judge's explanation and the responses, Mr. Chavez-Govea knowingly and voluntarily waived counsel at the first hearing.

Mr. Chavez-Govea suggests that the immigration judge should have revisited the issue at the second hearing. But at that hearing, Mr. Chavez-Govea didn't ask for more time to get legal help. He instead noted that he was already getting help from someone at *Las Americas*. So the immigration judge had

- no reason to believe that Mr. Chavez-Govea had changed his mind about representing himself and

- no reason to provide extra time in order to find an attorney.

**5.    The Board correctly held that the immigration judge didn't deny due process.**

Mr. Chavez-Govea also argues that the immigration judge denied due process by failing to develop the record or to allow the introduction of evidence. Because these arguments involve legal issues, we apply de novo

8

review. *See Witjaksono v. Holder*, 573 F.3d 968, 973–74 (10th Cir. 2009) (applying de novo review over a ruling on due process because a legal issue was involved).

The parties disagree on whether the immigration judge bears a duty to develop the record and allow the introduction of evidence. We need not resolve this disagreement: Regardless of whether the immigration judge needed to develop the record and allow evidence, he did so. So the Board correctly held that the immigration judge hadn't deprived Mr. Chavez-Govea of due process.

### a.    Mr. Chavez-Govea's lack of diligence

At the second hearing, the immigration judge had only one issue: Was Mr. Chavez-Govea sufficiently diligent to justify a continuance?

On this issue, the immigration judge developed the record, which showed Mr. Chavez-Govea's lack of diligence based on four facts:

1.    The immigration judge had clearly told Mr. Chavez-Govea at the first hearing that he would need to submit the form when the proceedings resumed in fifteen days.

2.    The immigration judge had unambiguously stated at the first hearing that Mr. Chavez-Govea would waive his chance to pursue relief if he failed to submit the form when the proceedings resumed.

3.    The immigration judge had offered at the first hearing to answer questions about the form.

4.    When the proceedings resumed, Mr. Chavez-Govea admitted that he hadn't paid enough attention to the deadline.

9

Mr. Chavez-Govea argues that he should have been asked to elaborate when he admitted that he hadn't paid enough attention. But Mr. Chavez-Govea doesn't identify any other pertinent questions.

Regardless of Mr. Chavez-Govea's reason, his inattention reflected a lack of diligence. The immigration judge could rely on that lack of diligence irrespective of Mr. Chavez-Govea's reasons for his prior inattention. *See Matter of Sibrun*, 18 I. & N. Dec. 354, 356 (BIA 1983) (stating that a continuance is justified only if the "alien . . . make[s] a reasonable showing that the lack of preparation occurred despite a diligent good faith effort to be ready to proceed"). So the immigration judge acted reasonably in denying the continuance when Mr. Chavez-Govea grounded his request on his prior inattention to the deadline.

### b.     Potential grounds for asylum, withholding of removal, or deferral of removal

Mr. Chavez-Govea also argues that the immigration judge should have further developed the factual basis of a claim involving fear of persecution or torture. This argument fails for two reasons.

First, this argument assumes that the immigration judge should have granted the continuance. Without a continuance, the immigration judge would have had no reason to consider the potential fear of persecution or torture.

Second, the immigration judge did develop the record as to the potential for persecution or torture. At the second hearing, the immigration judge questioned Mr. Chavez-Govea; and he explained that

- members of the Zeta cartel thought that his father-in-law had provided incriminating information and

- other cartels exist in the northern part of Mexico.

Mr. Chavez-Govea faults the immigration judge for changing the topic after expressing confusion over part of the testimony. When Mr. Chavez-Govea was asked what he expected if he returned to Mexico, he answered:

> Well, my life is in danger, definitely, because my father-in-law, which is my wife's father, when the Morales from the Zetas were caught, they were accused – they were found guilty and they – and that's saying that they were from the same cartel.

R. at 440. The immigration judge responded that he didn't understand and asked Mr. Chavez-Govea if he had ever been harmed in Mexico and why the cartels would want to hurt him. Mr. Chavez-Govea doesn't identify any other relevant questions that went unasked. Based on what was asked, we conclude that the immigration judge adequately developed the record as to Mr. Chavez-Govea's fears about persecution and torture.

Mr. Chavez-Govea says that the immigration judge "myopic[ally]" focused on past harm in Mexico. Appellant's Reply Br. at 17. We disagree with this characterization. The immigration judge responded to the testimony by asking Mr. Chavez-Govea if he had ever been harmed in

11

Mexico and who would want to harm him. This questioning lasered in on the basis of a claim involving persecution or torture.[6]

**6.    The Board correctly deemed a motion to reopen as moot.**

In earlier proceedings, the Board issued an initial decision in February 2022. Roughly three months later (May 2022), Mr. Chavez-Govea moved to reopen the proceedings. While the motion was pending, however, we vacated the Board's initial decision (June 2022). *Chavez-Govea v. Garland*, No. 22-9512, 2022 WL 2062864, at *1 (10th Cir. June 8, 2022) (unpublished).



Upon vacatur of the Board's decision, there was nothing left to reopen. *See* 8 C.F.R. § 1003.2(a) (allowing the Board to reopen a matter after rendering a decision). So the Board correctly decided in July 2024 that the motion to reopen had become moot.

---

[6]    Given the absence of a constitutional violation, we need not decide whether a violation would have prejudiced Mr. Chavez-Govea.



June 2022 — Tenth Circuit vacates the Board's initial decision.

July 2024 — The Board denies Mr. Chavez-Govea's Motion to Reopen based on mootness.

Mr. Chavez-Govea argues that the Board failed to explain its reasoning. But the reasoning is obvious: Mr. Chavez-Govea wanted to reopen a decision that we had already vacated. Given the vacatur of that decision, the motion to reopen was obviously moot and the Board had little reason to provide further explanation. *See Abdalla v. INS*, 43 F.3d 1397, 1398–99 (10th Cir. 1994) (stating that a noncitizen's petition for review "was mooted by vacatur of the sole order [the petition] sought to challenge"); *N.L.R.B. v. U.S. Postal Serv.*, 827 F.2d 548, 554 (9th Cir. 1987) ("The principles of administrative law do not require the [agency] to spell out the reasoning behind a patently obvious conclusion.").[7]

**7.    The Board didn't err in declining to treat the motion to reopen as a motion to remand.**

Mr. Chavez-Govea also argues that the Board should have treated the motion to *reopen* as a motion to *remand* to the immigration judge. For this argument, Mr. Chavez-Govea relies on a regulation, 8 C.F.R.

---

[7]    Mr. Chavez-Govea also argues that the Board could have overlooked his delay by reopening the proceedings sua sponte. But the Board deemed the motion moot based on vacatur of the prior decision (rather than Mr. Chavez-Govea's delay).

13

§ 1003.2(c)(4), which allows recharacterization as a motion to remand when a noncitizen files "[a] motion to reopen a decision rendered by an immigration judge or DHS officer that is pending when an appeal is filed, or that is filed while an appeal is pending before the Board." Explaining this regulation, the Board states that "[a] motion to reopen that is filed with the Board during the pendency of an appeal is generally treated as a motion to remand for further proceedings before an [i]mmigration [j]udge." BIA Practice Manual, Ch. 5.6(g). Based on this explanation of the regulation, Mr. Chavez-Govea argues that the Board should have treated his motion to reopen as one filed while his appeal was pending before the Board.

But as noted above, there was no appeal pending before the Board when Mr. Chavez-Govea moved to reopen. *See* Part 6, above. The Board decided the appeal in February 2022, and Mr. Chavez-Govea filed the motion to reopen roughly three months later. *See id.* At that time, the Board's initial decision was still in effect and there was no appeal pending before the Board. Absent the filing of a motion to reopen while the Board's decision on an appeal was pending, the regulation wouldn't allow the Board to treat the motion to reopen as a motion to remand. *See* 8 C.F.R. § 1003.2(c)(4). So the Board didn't err in declining to treat the motion to reopen as a motion to remand.

14

Mr. Chavez-Govea nonetheless appears to argue that the Board could have remanded the proceedings to the immigration judge when we vacated the Board's earlier decision. But Mr. Chavez-Govea didn't ask the Board for a remand to the immigration judge. Absent such a request, the Board had no reason to treat the motion to *reopen* as a motion to *remand* the proceedings to the immigration judge. The Board thus didn't err by failing to grant relief that Mr. Chavez-Govea hadn't requested.

## 8.     Conclusion

In our view, the Board didn't err in upholding the immigration judge's imposition of a 15-day deadline and denial of a continuance. Mr. Chavez-Govea admitted that he hadn't paid enough attention when the immigration judge explained the 15-day deadline.

Nor did the Board do anything to deprive Mr. Chavez-Govea of his right to counsel. Mr. Chavez-Govea maintained that he wanted to represent himself and acknowledged that he was already getting legal help.

In addition, the motion to reopen the Board's decision became moot when the decision was vacated.

Petition denied.