**Garwee K. TUTU and Ronnie Davis, Plaintiffs,**

v.

**J. Scott BLACKMAN, District Director, U.S. Immigration and Naturalization Service, Defendant.**

No. 97–CV–4922.

United States District Court, E.D. Pennsylvania.

June 18, 1998.

James J. Orlow, Philadelphia, PA, for Garwee K. Tutu, Ronnie Davis.

David H. Resnicoff, U.S. Attorney's Office, Philadelphia, PA, for J. Scott Blackman.

### MEMORANDUM

BUCKWALTER, District Judge.

Plaintiffs, Garwee K. Tutu ("Tutu") and Ronnie Davis ("Davis") seek review of Defendant's denial of Tutu's request for an extension of voluntary departure.[1] Presently before the court is a motion by Defendant, J. Scott Blackman, District Director of the U.S. Immigration and Naturalization Service in Philadelphia, ("District Director"), for dismissal of Plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and Plaintiffs' response.[2] For the following reasons, the District Director's motion will be granted.

## I. BACKGROUND

Tutu is a citizen of Liberia and currently married to Davis, a United States citizen. Tutu entered the United States on October 5, 1993 as a nonimmigrant visitor, stating to officials that she would not remain in the United States beyond April 4, 1994. After

---

1. In Plaintiffs' original Complaint (Dkt. No. 1), J. Scott Blackman is the only named defendant. In Defendant's motion to dismiss (Dkt. No. 7), two defendants are listed, J. Scott Blackman and the Immigration and Naturalization Service. Because the original complaint only lists Blackman and no motion to amend the caption was filed, the Immigration and Naturalization Service is not presently a party to this action.

2. "Plaintiffs' Reply to Defendant's Motion to Dismiss" (Dkt. No. 14), is referred to as "Plaintiffs' Response".

failing to leave by that date, Tutu was placed in deportation proceedings. At a deportation hearing on August 10, 1995, she agreed to depart voluntarily by February 10, 1996 pursuant to the voluntary departure provision of the former Immigration and Naturalization Act ("INA") § 244(e), now INA § 240B. (Former 8 U.S.C.A. § 1254e (1997), now 8 U.S.C.A. § 1229c (1998)). A condition of the agreement was that if she failed to voluntarily depart by February 10, 1996, an Order of Deportation would take effect.[3] On September 9, 1995 Tutu married Davis and on November 8, 1995, Davis submitted a petition for an immigrant visa for Tutu. On February 2, 1996, Tutu, through counsel, requested an extension of voluntary departure under the former 8 C.F.R. § 244.2, now 8 C.F.R. § 240.57.

Tutu was arrested on April 2, 1996, for failing to leave by February 10, 1996, and was taken into custody for deportation to Liberia.[4] On May 10, 1996 the INS approved Davis' Immigrant Visa Petition for his wife as an immediate relative. On May 12, 1996 the District Director denied Tutu's request for an extension of voluntary departure. This denial made Tutu's continuing presence in the United States unlawful and renders her ineligible for adjustment from non-immigrant to immigrant status. Plaintiffs seek review of this denial.

## II. DISCUSSION

■ Before a court may decide the merits of a case, the court must first have jurisdiction to hear it. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir.1991)(citing *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). In response to a motion under Fed.R.Civ.P. 12(b)(1), the Plaintiff has the burden of proving the existence of subject matter jurisdiction. *See id.* The District Director offers three reasons why this court lacks subject

matter jurisdiction over Plaintiffs' case. The District Director asserts that both §§ 242(g) and 242(a)(2)(B) of the INA strip this court of subject matter jurisdiction to review a denial of an extension of voluntary departure, and that even if these new statutes do not apply in the instant case, this Court still lacks jurisdiction to review a discretionary decision of the Attorney General. I find all three reasons equally persuasive.

■ First, the District Director contends that this court may not review his decision to deny an extension of voluntary departure because of recent changes in immigration laws contained in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). (Pub.L. No. 104–208, 110 Stat. 3009–546 (1996)). Section 306 of the IIRIRA completely reformed immigration laws and restructured judicial review of deportation orders.[5] The purpose of sections 301 through 309 of the IIRIRA is to "streamline[ ] rules and procedures in the [INA] to make it easier to deny admission to inadmissible aliens and easier to remove deportable aliens from the United States." H.R. Rep. 104–469(I), 104th Cong., 2d Sess. 359, 463 (1996) (reproduced at 1996 WL 168955). The IIRIRA repealed former section 106 of the Immigration and Nationality Act ("INA") and replaced it with a new section, 242. (INA § 242, 8 U.S.C.A. § 1252; IIRIRA § 306(a)(2), Pub.L. 104–208, 110 Stat. 3009 (1996)). The amended INA now contains a new provision, section 242(g), which restricts the jurisdiction of certain courts to review particular claims. INA § 242(g), 8 U.S.C.A. § 1252(g); IIRIRA § 306(c)(1). The provision, entitled "Exclusive Jurisdiction" states:

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceed-

---

**3.** Individuals who use voluntary departure, avoid the negative effects of compelled deportation, including a bar to reentry to the United States for a set number of years and a bar to adjustment of status.

**4.** Tutu was not immediately deported to Liberia due to civil war in that country. She was re-

leased from physical custody on April 12, 1996 under an Order of Supervision and remains free until conditions in Liberia stabilize.

**5.** Deportation orders were renamed "orders of removal".

ings, adjudicate cases, or execute removal orders against any alien under this chapter. INA § 242(g), 8 U.S.C.A. § 1252(g).

Section 242 went into effect on April 1, 1997. *See Auguste v. Attorney General,* 118 F.3d 723, 725 (11th Cir.1997). Section 242(g) contains a retroactivity provision, it applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under [the INA]." IIRIRA § 306(c)(1), Pub.L. No. 104–208, 110 Stat. 3009–656 (1996).

Defendant claims that INA § 242(g) applies to the instant case because Plaintiffs seek a review of the District Director's denial of an extension of voluntary departure. Case law, legislative history, and the language of the statute suggest that this interpretation is correct.

The Court of Appeals for the Seventh Circuit recognized the breadth of § 242(g), noting that all review under it is abolished with the exception of the writ of habeas corpus. *Ter Yang v. INS,* 109 F.3d 1185, 1195–96 (7th Cir.1997); *Fedossov v. Perryman,* 969 F.Supp. 26, 29 (N.D.Ill.1997) (Section 242(g) barred district court from reviewing Plaintiff's request to stay execution of final deportation).

Additionally, Congress' purpose in enacting the IIRIRA was to streamline judicial review and to prevent delay in the removal of illegal aliens. H.R. Rep. 104–469(I), 104th Cong., 2d Sess. 359, 463 (1996) (reproduced at 1996 WL 168955). Thus, Congress enacted INA § 242(g) to preclude aliens from bringing deportation-related claims like Tutu's outside the streamlined judicial scheme. Prior to the IIRIRA reform, aliens with final orders of deportation remained in the United States indefinitely. The IIRIRA was specifically designed to curb "abuses" of voluntary departure. 62 Federal Register 10312, 10324 (1998).

Plaintiffs argue that their claim concerning an extension of voluntary departure is a post-hearing decision and thus INA § 242(g) does not apply to Plaintiffs' claim. Plaintiffs, how-

ever, do not cite any cases stating that INA § 242(g) does not apply to post-hearing decisions, and other courts have held that § 242(g) precludes review of a denial of a stay of removal.[6] *See Ray v. Reno,* 1998 WL 223646 at *2 (D.Utah April 28, 1998) (an action brought to enjoin Attorney General from removing Plaintiff while he sought to adjust his status arose from "the decision or action by the Attorney General to ... execute removal orders against an alien under the INA."); *Fedossov,* 969 F.Supp. at 29.

Although Plaintiffs' Complaint does not challenge Tutu's final order of deportation, and Plaintiffs claim that the final order of deportation and the extension of voluntary departure are not related, the claims still "arise from" the deportation order covered under § 242(g). Tutu would not have needed to apply for voluntary departure or request an extension had she not been in deportation proceedings. By denying her request for an extension, the District Director was executing the removal orders against Tutu. Plaintiffs further argue that because the District Director's decision denying an extension came a month after Tutu's arrest, it does not constitute executing removal proceedings. Had the District Director granted the request for an extension, however, he would have delayed deportation proceedings. Instead, he chose to deny an extension, thus executing Tutu's removal. I find that the request for an extension of voluntary departure arises from the deportation order, and therefore, INA § 242(g) bars this Court's review of Plaintiffs' claim.

 The District Director also claims that this Court lacks subject matter jurisdiction to review Plaintiffs' claim because the IIRIRA contains a specific provision applicable to this case. INA § 242(a)(2)(B) precludes judicial review of denials of discretionary relief such as extensions of voluntary departure. 8 U.S.C.A. § 1252(a)(2)(B). The decision to initially grant or deny voluntary departure is within the authority and discretion of the Attorney General. *See* former INA § 244.2, new INA § 240B, former 8

---

**6.** A stay of removal is another means to remain in the United States beyond a specified date, similar to an extension of voluntary departure.

*See Lalani v. Perryman,* 1996 WL 284949 at *2–3 (N.D.Ill. May 23, 1996), *aff'd,* 105 F.3d 334 (7th Cir.1997).

U.S.C.A. § 1254(e), new 8 U.S.C.A. § 1229c; *see also Kaczmarczyk v. INS*, 933 F.2d 588, 597 (7th Cir.1991). Moreover, the decision whether to grant an extension of voluntary departure is also within the sole discretion of the District Director. *See* former 8 C.F.R. § 244.2, new 8 C.F.R. § 240.57; *see also Lalani v. Perryman*, 105 F.3d 334, 337–38 (7th Cir.1997); *Kaczmarczyk*, 933 F.2d at 598.

Because Plaintiffs filed their suit in July 1997, three months after the IIRIRA changes went into effect and fourteen months after the decision denying an extension was reached by the District Director, INA § 242(a)(2)(B) applies to the instant case, which is a separate proceeding from the deportation hearings on August 10, 1995 and the subsequent arrest in April of 1996, a fact acknowledged by the Plaintiffs. Even though the instant case arises out of Tutu's prior deportation proceedings, the procedure involved in a request for an extension of voluntary departure is separate and distinct. Tutu's request for an extension of voluntary departure was not submitted to the District Director until after her deportation proceedings were concluded and was therefore not ancillary to the deportation hearings, even though the need for an extension arose out of her deportation hearings. Therefore, INA § 242(a)(2)(B) applies to Plaintiffs' Complaint notwithstanding INA § 242(a)(2)(B)'s lack of a retroactivity provision. This reading is consistent with Congress' intent in enacting the IIRIRA to streamline the INA and make for easier removal of deportable aliens. This court does not have jurisdiction to review a discretionary decision, such as an extension of voluntary departure, issued by the District Director. Therefore, § 242(a)(2)(B) also bars review of Plaintiffs' Complaint.

Finally, even if this court were to find that the effective date of INA § 242(a)(2)(B) renders it inapplicable to the instant case, this court still lacks the authority to review the District Director's decision to deny an extension of voluntary departure. Prior to the enactment of the IIRIRA, the District Director had the sole authority to grant voluntary departures under the former 8 U.S.C.A. §§ 1252(b), 1254(e). *See Kaczmarczyk*, 933 F.2d at 597; *Ademi v. INS*, 31 F.3d 517, 521 (7th Cir.1994). Under former 8 C.F.R. § 244.2, the District Director was vested with the sole authority to reinstate or extend a grant of voluntary departure and no appeal could be taken from that determination. *See Kaczmarczyk*, 933 F.2d at 598 (recognizing limited jurisdiction of judiciary to review such decisions under 8 C.F.R. § 244.2 and holding that court lacked authority to review INS's discretionary grant of voluntary departure); *see also Nocon v. INS*, 789 F.2d 1028, 1034 (3rd Cir.1986) (Board of Immigration Appeals has no authority to grant extension because sole authority rests with District Director); *Lalani*, 105 F.3d at 338 (noting that there is no meaningful standard for reviewing decisions made under 8 C.F.R. § 244.2). *But see Castaneda v. INS*, 23 F.3d 1576, 1579 (10th Cir.1994) (noting that some courts have recognized that District Director's refusal to extend voluntary departure is reviewable in District Court pursuant to the general jurisdictional grant set out in 8 U.S.C. § 1329.) (citing *Williams v. INS*, 795 F.2d 738, 745 (9th Cir.1986)).

■ Additionally, even if an alien meets the prerequisites for a granting of voluntary departure, relief in the form of voluntary departure is not mandated. *See Strantzalis v. INS*, 465 F.2d 1016, 1017 (3rd Cir.1972). It is within the broad discretion of the Attorney General to grant or deny relief. According to the voluntary departure regulations, an alien must intend to leave the United States and must have immediate means to depart this country. *See* former 8 C.F.R. § 244.1. Tutu's intent to depart may have been questionable since she was requesting the extension in order to remain in this country while she adjusted her status after marriage to Davis. Regardless of her intentions, however, this court cannot review the Attorney General's discretionary decision concerning voluntary departures, as such decisions are normally entrusted to the INS rather then to the judicial branch. *See Lalani*, 105 F.3d at 337.

■ I am also unpersuaded by Plaintiffs' claim that the District Director's denial of an extension was contrary to law because no reason was given for the denial. The Court

of Appeals for the Seventh Circuit has held that the Administrative Procedure Act does not specifically require that a reason be given for a denial of an extension of voluntary departure in an immigration proceeding. *Lalani*, 105 F.3d at 337–38. The regulation governing extensions of voluntary departures, former 8 C.F.R. § 244.2, does not state how the District Director should arrive at a decision, nor does it mandate that the District Director include an explanation. The District Court in *Lalani* noted this lack of mandate when comparing the informal procedures required upon requesting an extension of voluntary departure with the formal stay of deportation under former 8 C.F.R. 243.4. *Lalani*, 1996 WL 284949 at *2–3 (N.D.Ill. May 23, 1996).

Accordingly, Defendant's motion to dismiss will be granted because this Court lacks jurisdiction to review Plaintiffs' Complaint.[7]

---

7. Davis' suit is derivative of Tutu's suit. Because this court lacks jurisdiction to review Tutu's claim, Davis' suit is also dismissed.