Bassam Elias MOUSSA, Petitioner,

v.

Carol JENIFER, District Director of the Immigration and Naturalization Service, Respondent.

No. CIV. 02–40112.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 28, 2003.

Marshal E. Hyman, Marshal Hyman Assoc., Troy, MI, for Bassam Elias Moussa, petitioner.

## *MEMORANDUM OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS*

GADOLA, District Judge.

Before the Court is Petitioner Bassam Elias Moussa's petition for a writ of habeas corpus and complaint for declaratory and injunctive relief [docket entry 1]. For the reasons set forth below, the Court shall dismiss the petition for lack of subject matter jurisdiction.

## I. BACKGROUND

Petitioner is a citizen of Syria presently residing in Southgate, Michigan. Petitioner entered the United States on January 31, 1993 on visitor status for the purpose of obtaining urgent medical care for significant left ventricular dysfunction. Petitioner underwent aortic valve replacement surgery on June 21, 1993, and the Immigration and Naturalization Service ("INS")[1] extended the period of his stay during his recovery from the surgery.

On March 24, 1994, Petitioner married a United States citizen. Petitioner's spouse

---

1. The Court notes that, due to a reorganization of the Government, the INS no longer exists as an independent agency, with certain of its functions having been transferred to the Department of Homeland Security as of

filed a Petition for Alien Relative on his behalf, which the INS approved. Petitioner and his wife divorced, and his ex-wife withdrew the Petition for Alien Relative. Thus, the INS began deportation proceedings against Petitioner. On August 1, 1995, Petitioner conceded deportability and waived appeal. The INS permitted Petitioner to voluntarily depart from the United States on or before October 2, 1995.

Due to Petitioner's medical condition, the INS extended Petitioner's voluntary departure until September 30, 1997. Petitioner requested deferred action as to his departure date on July 30, 1997 due to continued post-operative care that he was receiving. Allegedly, the INS did not respond to this request. Petitioner made additional requests for deferred action, the last one occurring on September 29, 2000. Petitioner alleges that he made these additional requests due to his continuing need for reliable monitoring of his heart condition and because of massive internal bleeding. Petitioner asserts that he received no response from the INS as to any of these requests for deferred action.

On March 22, 2002, Petitioner filed form I–246, Application for Stay of Deportation or Removal. Petitioner premised his application upon his alleged need for "lifesaving medical care," which he alleged he could not receive in Syria. On April 5, 2002, the INS denied Petitioner's Application for Stay of Deportation or Removal and ordered Petitioner to report to the INS prior to April 22, 2002 with a closed, non-refundable ticket to depart the United States prior to April 30, 2002.

On April 29, 2002, Petitioner filed his petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2241. On May 1, 2002, this Court stayed Petitioner's deportation. Respondent filed its answer to the Petition on May 1, 2002, and Petitioner filed a response brief on May 10, 2002. The parties filed additional briefs prior to oral argument, which the Court heard on May 22, 2002. Following the hearing, on June 6, 2002, the Court directed the parties to file supplemental briefs.[2]

In the petition, Petitioner alleges that the INS's efforts to remove him violate (1) the Immigration and Nationality Act ("INA") and (2) his constitutional rights to procedural and substantive due process. Petitioner's claims are based upon his contention that he suffers from a serious heart condition and requires specialized medical care that is not available in Syria. Petitioner alleges that the his life will be at risk without the necessary medical care.

## II. ANALYSIS

Respondent asserts that this Court lacks subject matter jurisdiction over Petition-

March 1, 2003. *See Nolan v. Holmes,* 334 F.3d 189, 191 (2d Cir.2003).

**2.** The docket in this matter contains three errors, which the Court now clarifies. **(1)** Petitioner filed a response brief that was file-stamped by the Clerk on May 10, 2002. Due to an apparent filing error, the brief was not entered onto the Court's docket on that date. Upon the Court's discovery of this error, Petitioner's brief was entered on January 10, 2003. The Court considers Petitioner's response brief filed as of the date of the time stamp. The proof of service indicates that Petitioner served Respondent with this brief on May 9, 2002.**(2)** The Court received Peti-

tioner's supplemental response brief on or about May 21, 2003. Due to an apparent filing error, this brief was received by the Court but not properly filed. Upon discovery of this error, the Court filed this brief on January 9, 2003. The Court considers this brief timely based upon the date of receipt. The proof of service indicates that Petitioner served Respondent with this brief on May 20, 2002. **(3)** The same error befell Petitioner's supplemental brief, received by the Court on or about June 11, 2002. The Court filed this brief on January 9, 2003 but considers it timely. The proof of service indicates that Petitioner served Respondent with this brief on June 10, 2002.

er's claims pursuant to INA §§ 242(a)(2)(B)(ii) and 242(g), codified at 8 U.S.C. § 1252(a)(2)(B)(ii) and 8 U.S.C. § 1252(g), respectively. Congress passed both of these provisions as amendments to the INA through the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009–546. Because 8 U.S.C. § 1252(g) is dispositive in this case, the Court turns first to Respondent's argument under that provision.

■ Section 1252(g) of Title 8, United States Code provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence proceedings, adjudicate cases,* or *execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added).[3] IIRIRA contains a retroactivity provision which provides that § 1252(g) "appl[ies] without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act." IIRIRA § 306(c)(1); *see Mustata v. United States. Dep't of Justice,* 179 F.3d 1017, 1020 (6th Cir.1999). Thus, although Petitioner contends that his order of deportation became final on August 1, 1995, prior to the enactment of IIRIRA, § 1252(g) is without question applicable to his case.

The Supreme Court has narrowly construed § 1252(g) to "appl[y] only to three discrete actions that the Attorney General may take: [the] decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (quotations omitted) ("*AADC*"). The Supreme Court noted in *AADC* that "[s]ection 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." 525 U.S. at 485, 119 S.Ct. 936.

Here, Petitioner conceded deportability on August 1, 1995. The INS ordered him to voluntarily depart the United States by October 2, 1995, including any extensions granted by the District Director. The Immigration Judge's order permitting voluntary departure also provided that, if Petitioner failed to depart as required, an order of deportation would become immediately effective. Subsequently, the INS extended Petitioner's voluntary departure until September 30, 1997. Petitioner alleges that he requested deferred action as to his departure date on July 30, 1997 but received no response from the INS. Petitioner did not voluntarily depart the United States on September 30, 1997. Petitioner alleges that he made additional requests for deferred action, the last occurring on September 29, 2000, but that the INS did not respond to these requests. Finally, on March 22, 2002, Petitioner filed form I–246, Application for Stay of Deportation or Removal. On April 5, 2002, the INS denied Petitioner's Application for Stay of Deportation or Removal and ordered Petitioner to report to the INS prior to April 22, 2002 with a closed, non-refunda-

---

**3.** Under IIRIRA, the term "deportation" was replaced by the term "removal." *See* IIRIRA § 309(d)(2).

ble ticket to depart the United States prior to April 30, 2002.

As an initial matter, the Court must characterize Petitioner's claim in order to determine whether it seeks review of one of the three types of decisions identified in § 1252(g). *See Fedorca v. Perryman*, 197 F.3d 236, 240 (7th Cir.1999). The Attorney General, through his delegate the District Director, denied Petitioner's Application for a Stay of Deportation or Removal.[4] In his petition before this Court, Petitioner seeks a stay of the execution of his order of deportation until his medical condition improves.

■ The District Director's decision to deny Petitioner's request for a stay of deportation was a decision to *execute a removal order*. *See Saccoh v. INS*, 24 F.Supp.2d 406, 408 (E.D.Pa.1998) ("The Attorney General's denial of Mrs. Saccoh's request for an extension of voluntary departure was a decision to execute a deportation order in that the denial made Mrs. Saccoh automatically subject to deportation ...."); *Tutu v. Blackman*, 9 F.Supp.2d 534, 537 (E.D.Pa.1998) (noting that, by denying the petitioner's request for an extension of voluntary departure, the District Director was executing a removal order against the petitioner).[5] Pursuant to 8 U.S.C. § 1252(g) and *AADC*, this Court may not review the Attorney General's discretionary decision to *execute a removal order*. Because Petitioner's request for a stay of deportation would require this Court to review such a decision by the Attorney General, the Court lacks jurisdiction over Petitioner's claim under 8 U.S.C. § 1252(g). *See Sharif ex. rel. Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002) ("A request for a stay of removal 'arises from' the Attorney General's decision ... to execute a removal order."); *Fedorca* 197 F.3d at 240 (finding that petitioner's request for "a stay of deportation pending his appeal to the BIA" constituted "review of the decision to execute his deportation, which is barred by § 1252(g)"); *Kitphothiyan v. Ashcroft*, 74 Fed.Appx. 623, 625–26, 2003 WL 21956969, at *2 (7th Cir.2003) (same); *Harb v. INS*, No. 00–71303, 2000 WL 424195, at *4 (E.D.Mich. March 23, 2000) (Borman, J.) (same).

The fact that Petitioner has labeled his petition as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 does not change this result. In *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court held that IIRIRA did not strip the federal courts of habeas jurisdiction under § 2241. *Id.* at 314. However, the Court in *St. Cyr* noted that habeas review of final orders of removal was limited to pure questions of law, as opposed to review of discretionary de-

---

**4.** The decision to stay an order of removal is within the discretion of the Attorney General, and is provided for by regulation as follows: Any request of an alien under a final order of deportation or removal for a stay of deportation or removal shall be filed on Form I–246, Stay of Removal, with the district director having jurisdiction over the place where the alien is at the time of filing. The Commissioner, Deputy Commissioner, Executive Associate Commissioner Field Operations, regional director, or district director, *in his or her discretion* and in consideration of factors listed in 8 CFR 212.5 and section 241(c) of the Act, may grant a stay of removal or deportation for such time and under such conditions as he or she may deem appropriate. Neither the request nor the failure to receive notice of disposition of the request shall delay removal or relieve the alien from strict compliance with any outstanding notice to surrender for deportation or removal.

8 C.F.R. § 241.6(a) (emphasis added).

**5.** Although Petitioner in the present case seeks a stay of deportation, the court in *Tutu* noted that "[a] stay of removal is another means to remain in the United States beyond a specific date, similar to an extension of voluntary departure." *See* 9 F.Supp.2d at 537 n. 6.

terminations made by the Attorney General. *See* 533 U.S. at 314 n. 38, 121 S.Ct. 2271 (noting that "the scope of review on habeas is considerably more limited than on APA-style review"). Courts interpreting the scope of habeas review provided for in *St. Cyr* have held that such review is limited to statutory or constitutional questions, which are pure questions of law, but does not extend to review of the Attorney General's discretionary determinations. *See Sol v. INS*, 274 F.3d 648, 651 (2d Cir.2001), *cert. denied*, 536 U.S. 941, 122 S.Ct. 2624, 153 L.Ed.2d 807 (2002); *Chmakov v. Blackman*, 266 F.3d 210, 215 (3d Cir.2001) (discussing 8 U.S.C. § 1252(g)).

Here, Petitioner alleges two general questions of law in his petition. First, Petitioner alleges that "[t]he actions and interpretations of the Immigration and Nationality Act by the INS ... are in violation of applicable law, applicable regulations, applicable precedent, and contrary to established INS practices." Pet. ¶ 35. Second, Petitioner alleges the actions of the INS "violate [his] rights to procedural and substantive due process as guaranteed by the United States Constitution." *Id.* at ¶ 40. Petitioner alleges that the INS violated his procedural due process rights "in that he is entitled, before being deprived of a substantial liberty interest, of having a full and fair adjudication of his application for a stay of deportation." *Id.* at ¶ 41.

█ Despite this broad language in his petition, Petitioner's statutory and constitutional arguments fail to state cognizable legal claims. Petitioner's statutory claims are conclusory at best; he cites no specific provision of the INA, the regulations, precedent, or INS practices. The same is true of Petitioner's constitutional argument. Petitioner does not explain the sub-

stantive due process right for which he is seeking recognition.[6] Further, Petitioner cites no authority for the proposition that he has a due process right to continue his medical care in this country, and the Court is aware of no such authority. Finally, Petitioner does not explain how the INS's procedure somehow deprived him of a full and fair adjudication of his claim. It is noteworthy that Petitioner conceded that he was deportable on August 1, 1995 and waived his appeal. Petitioner does not challenge the underlying order of deportation.

Although the petition purports to raise pure questions of law, the petition in reality requests review of a determination committed to the discretion of the Attorney General, *i.e.*, the decision to execute an order of removal. *Cf. Torres–Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir.2001) ("Although we retain jurisdiction to review due process challenges, a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb."). Therefore, Petitioner's claims are not within the scope of habeas review outlined in *St. Cyr. See Sharif* 280 F.3d at 787 ("*St. Cyr* does not disturb the holding of [*AADC*] that 8 U.S.C. § 1252(g) blocks review in the district court of particular kinds of administrative decisions."); *Kitphothiyan*, 74 Fed.Appx. at 625–26, 2003 WL 21956969, at *2 ("The execution of [an] ... order for deportation, as a decision to execute a removal order ... falls under the auspices of the discretionary activities that *St. Cyr* did not address"). Accordingly, pursuant to 8 U.S.C. § 1252(g) and the Supreme Court's holding in *AADC*, this Court must dismiss the petition for lack of subject matter jurisdiction.[7]

---

6. "[A]liens illegally in the United States do not have a fundamental right to remain." *Sad v. INS*, 246 F.3d 811, 819 (6th Cir.2001) (citing *Harisiades v. Shaughnessy*, 342 U.S.

580, 586–87, 72 S.Ct. 512, 96 L.Ed. 586 (1952)).

7. As noted above, Respondent argues that 8 U.S.C. § 1252(a)(2)(B)(ii) also divests this

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [docket entry 1] is **DISMISSED** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that the Court's order staying Petitioner's order of deportation [docket entry 3] is **VACATED.**

**SO ORDERED.**

Court of jurisdiction over Petitioner's claims. Petitioner argues that this provision, which was not made retroactive under IIRIRA, is not applicable to his case. Because the Court has concluded that 8 U.S.C. § 1252(g) is dispositive in this case, the Court need not address Respondent's alternate argument under 8 U.S.C. § 1252(a)(2)(B)(ii).